United States Court of Appeals,

Fifth Circuit.

No. 92-7257.

Harry SPENCE and Nancy Spence Fortner, Plaintiffs-Appellees,

v.

OMAHA INDEMNITY INSURANCE COMPANY, Defendant-Appellant.

Aug. 2, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, GOLDBERG and JONES, Circuit Judges.

POLITZ, Chief Judge:

Omaha Indemnity Insurance Company appeals an adverse judgment on verdict in this action by Harry Spence and Nancy Fortner which raises both *ex contractu* and *ex delicto* claims. We affirm.

Background

Spence and Fortner, then husband and wife, purchased a Standard Flood Insurance Policy (SFIP) from Omaha, through sales agent Whitney-Vaky, Inc. Omaha provides flood insurance through the National Flood Insurance Program (NFIP) under an agreement with the Federal Emergency Management Agency (FEMA), which authorizes it to operate as a "Write-Your-Own" (WYO) insurance company.[1] On April 11, 1985, heavy rains flooded the Spence basement, damaging furniture, appliances, and other belongings therein, and damaging the basement itself. Roy Yoakum,

---

[1]The National Flood Insurance Act of 1968 (NFIA), 42 U.S.C. §§ 4001-127, established the NFIP. Initially, the program operated primarily through a pool of private insurers under the supervision of and with financial support from the Department of Housing and Urban Development. In 1977, pursuant to 42 U.S.C. § 4071, the Secretary of HUD terminated that arrangement and made FEMA principally responsible for its operation. *See generally Berger v. Pierce,* 933 F.2d 393 (6th Cir.1991). FEMA by regulation promulgated the SFIP, and provided for marketing and claims adjustment by private insurers operating as WYO companies. Those companies issue SFIPs in their own names, *see* 44 C.F.R. §§ 61.13(f), 62.23(a), collecting premiums in segregated accounts from which they pay claims and make necessary refunds under those policies. 44 C.F.R. Pt. 62, App. A, Arts. II(E), III(D), III(E). In the absence of sufficient funds in the segregated accounts, WYO companies pay claims and make refunds by drawing on FEMA letters of credit. *See* 44 C.F.R. Pt. 62, App. A, Art. IV. They may not alter the terms of the SFIP as dictated by FEMA, *see* 44 C.F.R. § 62.23(c). They receive a portion of the premiums collected as reimbursement for expenses incurred as a result of their NFIP participation. *See* 44 C.F.R. Pt. 62, App. A, Arts. III(B), III(C).

a claims adjuster, surveyed the damage a few days later. The Spences claimed that repair of damage to the basement, not including damage to contents, would cost $92,500. Relying on a policy exclusion for "finished basement walls, floors, ceilings and other improvement to a basement ... and contents, machinery, building equipment and fixtures in such basement," on May 15, 1985, Omaha issued a notice denying the Spences' claim. The Spences contend that they relied upon representations by Whitney-Vaky and Yoakum about the coverage under the SFIP and, as a result, suffered substantial losses.

The Spences filed the instant action on May 10, 1989,[2] alleging breach of the insurance contract and fraud arising out of representations by Whitney-Vaky and Yoakum.[3] The district court denied Omaha's motion for summary judgment on statute of limitations grounds. The parties consented to trial before a magistrate judge and the case was submitted to the jury on both fraud and contract theories of liability. The jury answered special interrogatories finding that: (1) Whitney-Vaky and Yoakum were agents of Omaha; (2) both made misrepresentations to the Spences concerning the scope of their insurance coverage upon which the Spences justifiably relied; (3) ambiguity in the policy should be resolved favorably to the Spences; and (4) the Spences suffered a loss of $84,123.30. The trial court denied post-trial motions for judgment as a matter of law and for new trial and entered judgment upon the verdict, awarding damages as found by the jury and pre- and post-judgment interest and costs. Omaha timely appealed.

Analysis

1. *Statute of Limitations*

Omaha first faults the district court's refusal to dismiss the Spences' claims as barred by applicable limitations periods. In support of its position, Omaha invites our attention to Article VIII(Q) of the SFIP, which provides:

---

[2]They previously had filed suit against Omaha on September 5, 1985, and February 20, 1987. Both suits were dismissed, the first for want of jurisdiction and the second for failure to prosecute.

[3]The Spences also alleged violations of the Texas Deceptive Trade Practices Act and Insurance Code in their original complaint, but abandoned these claims before trial.

You may not sue [the WYO insurer] to recover money under t his policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit *within twelve (12) months* from the date we mailed you notice that we have denied your claim, or a part of your claim.[4]

Omaha also points out that, under 42 U.S.C. § 4072,

upon the disallowance by the Director of any [claim under a flood insurance policy], or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, *within one year* after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim.[5]

Omaha argues that these provisions establish a one-year limitation period which, rather than the four-year period provided for by Texas law,[6] controls in this case and bars the Spences' contract and misrepresentation claims.[7] Because the district court entered judgment on alternative bases of liability, limitations provide a complete defense for Omaha only if both claims are time-barred.

FEMA regulations promulgated under the National Flood Insurance Act establish the terms of the SFIP which WYO insurers may issue.[8] WYO companies may not alter those terms.[9] As Omaha points out, Article VIII(Q) of the SFIP requires the insured to institute any actions against the WYO insurer "to recover money under this policy" within one year from the date on which it

---

[4] 44 C.F.R. Pt. 61, App. A(1), Art. VIII(Q) (emphasis added).

[5] 42 U.S.C. § 4072 (emphasis added).

[6] *E.g., Clade v. Larsen,* 838 S.W.2d 277 (Tex.Ct.App.1992) (four-year limitations period governs actions for breach of contract) (*citing* Tex.Civ.Prac. & Rem.Code § 16.004; *Certain-Teed Prods. Corp. v. Bell,* 422 S.W.2d 719, 721 (Tex.1968)); *M & M Distrib. v. Dunn,* 819 S.W.2d 639 (Tex.Ct.App.1991) (four-year limitations period governs actions for fraud or misrepresentation) (*citing Williams v. Khalaf,* 802 S.W.2d 651 (Tex.1990)).

[7] The district court rejected Omaha's statute of limitations argument, finding both of these provisions applicable only in actions against FEMA.

[8] 44 C.F.R. Pt. 61, App. A(1); 44 C.F.R. § 61.13(a) ("Each of the Standard Flood Insurance Policy forms included in appendix "A" hereto ... and by reference incorporated herein shall be incorporated into the Standard Flood Insurance Policy.").

[9] *See* 44 C.F.R. § 61.5(i) ("The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself."); id. § 61.13(a); id. § 61.13(d) ("The Standard Flood Insurance Policy and required endorsements must be used in the Flood Insurance Program, and no provision of the said documents shall be altered, varied, or waived other than through the issuance of an appropriate amendatory endorsement, approved by the Administrator as to form and substance for uniform use."); id. § 62.23(c) (flood insurance provided by WYO companies "shall be issued under the [SFIP]").

mailed notice of disallowance or partial disallowance. Because regulations provide that "all flood insurance made available under the Program is subject ... [t]o the terms and conditions of the Standard Flood Insurance Policy, which shall be promulgated by the Administrator,"[10] FEMA, acting well within its statutory rulemaking authority,[11] has established a one-year limitations period governing actions to recover against WYO companies under SFIPs.[12] That limitation clearly bars the Spences' contract claim.[13]

We reach a different conclusion, however, as to the timeliness of the Spences' fraud claims. While the national policies underlying the NFIP and extensive federal role therein impel our conclusion that federal common law governs claims under flood insurance policies,[14] the same does not apply in actions for tortious misrepresentation against WYO insurers. FEMA regulations accord

---

[10]44 C.F.R. § 61.4(a)(2).

[11]FEMA has authority to promulgate by regulation "general terms and conditions of insurability ..., including ... any ... terms and conditions relating to insurance coverage or exclusion which may be necessary to carry out the purposes of this chapter." 42 U.S.C. § 4013.

[12]We note that prior to the restructuring of the NFIP, 42 U.S.C. § 4053 provided for a one-year limitations period in actions on policies issued by private flood insurance pool participants. Although the present flood insurance scheme does not use the pool provided for in § 4053, that section indicates congressional intent to place a one year limitations period on actions under flood policies issued by private NFIP participants. Further, as FEMA, in effect, pays all claims under SFIPs through the letter of credit mechanism, 42 U.S.C. § 4072, establishing a one-year limitations period for actions directly against the agency on such policies, supports our conclusion.

[13]Because we find the Spences' contract action time-barred, we need not consider Omaha's contentions that the district court erroneously found ambiguity in the policy here at issue, or that misrepresentations by Whitney-Vaky and Yoakum could not operate to waive policy exclusions.

[14]Thus, considering the availability of prejudgment interest and penalties for arbitrary denial of claims in an action seeking recovery on a flood insurance policy, we noted that because

> the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and [because] the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law.

*West v. Harris,* 573 F.2d 873, 881 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979); *see also, e.g., Mason Drug Co. v. Harris,* 597 F.2d 886 (5th Cir.1979) (federal law governs interpretation of flood insurance policy).

substantial autonomy to WYO companies in SFIP marketing and claims adjustment,[15] and expressly provide that "WYO Companies shall not be agents of the Federal Government."[16]  Further, while WYO insurers may draw on FEMA letters of credit to pay SFIP claims, the WYO-FEMA agreement does not permit such draws to cover a WYO company's liability for fraud.[17]  The more attenuated federal interests in such claims lead to our conclusion that the limitations period governing them derives from state rather than federal law.  Article VIII(Q) of the SFIP concerns only suits "to recover money under this policy."  Likewise, 42 U.S.C. § 4072 addresses itself solely to actions arising from partial or complete disallowance of flood insurance policy claims.[18]  Neither provision sets a limitations period governing tort actions based on misrepresentations concerning the SFIP, as opposed to contract claims under the SFIP itself.[19]  Absent express preemption of state law fraud

[15]*See* 44 C.F.R. § 62.23(e) ("a WYO Company shall utilize its own customary standards, staff and independent contractor resources, as it would in the ordinary and necessary conduct of its own business affairs, subject to the [NFIA and regulations promulgated pursuant thereto].");  44 C.F.R. Pt. 62, App. A, Art. II, sec. G (WYO companies "may market flood insurance policies in any manner consistent with its customary method of operation, provided that there is adherence to Program statutes, regulations and explicit guidelines").

[16]44 C.F.R. § 62.23(g).

[17]That agreement, which FEMA has incorporated into regulations governing the NFIP, *see* 44 C.F.R. § 62.23(a), permits reimbursement of WYO companies for "payments as a result of awards or judgments for damages arising under the scope of this Arrangement, policies of flood insurance issued pursuant to this Arrangement, and the claims processing standards and guides set forth at Article II, Section A, 2.0 of this Arrangement."  44 C.F.R. Pt. 62, App. A, Art. III, Section D(2). It also calls for reimbursement of loss adjustment expenses and premium refunds.  44 C.F.R. Pt. 62, App. A, Art. III, Secs. (C), (E).  These provisions plainly do not contemplate reimbursement for judgments on tort claims such as those asserted by the Spences. *See also* 42 U.S.C. § 4081(c) ("The Director of the Federal Emergency Management Agency may not hold harmless or indemnify an agent or broker for his or her error or omission.").

[18]Notably, 42 U.S.C. § 4053, establishing a one-year limitations period for actions against members of the private insurer pool through which the NFIP operated prior to 1977, also concerns only actions arising from claims under insurance policies.  It does not address tort claims against such parties.

[19]Omaha suggests that the SFIP choice-of-law clause, which provides "[t]his policy is governed by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended ... and Federal common law" requires an opposite result.  We disagree.  The clause to which Omaha points refers only to the SFIP itself, and does not purport to subject tortious conduct of WYO insurers to otherwise inapplicable federal law.  Omaha also seeks support for its position in Article XV of its agreement with FEMA.  That provision states:

> This Agreement and all policies of insurance issued pursuant thereto shall be

actions against WYO insurers[20] or conflict with any federal provision, we conclude that the Spences timely filed their action for misrepresentation under the four-year Texas limitations period.

2. *Effect of Misrepresentations by Whitney-Vaky and Yoakum*

Omaha next claims that 44 C.F.R. § 61.5(i) absolves it from tort liability for any misrepresentations of Whitney-Vaky and Yoakum regarding coverage provided by the SFIP. That regulation provides:

> The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, and the duly licensed property or casualty agent acts for the insured and does not act as agent for the Federal Government, [FEMA], or the servicing agent.

Focusing on the second sentence of this provision, Omaha argues that it precludes recovery arising from misrepresentations of the sort which the Spences alleged. We are not persuaded. FEMA regulations disclaiming any agency relationship with WYO companies, as well as the terms of the FEMA-WYO agreement, more indicate intent to leave those insurers responsible for their own tortious conduct. The regulation relied on by Omaha, read as a whole, plainly evinces an intent to prevent expansion of SFIP coverage through misrepresentations by private parties involved with the program, thereby protecting the government from expanded liability. We decline to accept a reading of that provision immunizing WYO companies from liability for the tortious conduct of their agents.

3. *Effect of Spence's Constructive Knowledge*

---

> subject to the provisions of the Act and Regulations issued pursuant thereto and all Regulations affecting the work that are issued pursuant to the Act, during the term hereof.

> Because no FEMA regulation or NFIA provision addresses the Spences' fraud claim, this assertion founders.

[20]The NFIA contains no express preemption provision. *Compare Burkey v. Government Employees Hosp. Ass'n,* 983 F.2d 656 (5th Cir.1993) (express preemption clause indicated congressional intent to displace state law remedy for unreasonable delay in processing of federal employee health benefits insurance claim). Neither Omaha nor the federal government as *amicus* suggests preemption of the state law fraud claim.

Finally, relying on *Federal Crop Insurance Corp. v. Merrill,*[21] Omaha asserts that because publication in the Code of Federal Regulations gave the Spences constructive knowledge of the policy terms, they could not rely upon and thus cannot recover in tort for any misrepresentations of Whitney-Vaky or Yoakum. This argument overlooks the rubric that constructive notice affords no defense under Texas law to an action for intentional or negligent misrepresentation.[22] Thus, assuming *arguendo* that Omaha may avail itself of the rule in *Merrill*[23] and that publication in the Code of Federal Regulations gave the Spences constructive notice of policy terms, such notice would not excuse Omaha from liability for its agents' misrepresentations.

For these reasons, the judgment appealed is AFFIRMED.

---

[21]332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

[22]*Ojeda de Toca v. Wise,* 748 S.W.2d 449 (Tex.1988); *ECC Parkway Joint Venture v. Baldwin,* 765 S.W.2d 504 (Tex.App.1989).

[23]We note in this connection that the Supreme Court formulated the *Merrill* constructive notice rule in the context of an action asserting estoppel against the government. Relying on *Seavers v. Federal Emergency Management Agency,* No. 84-2694 (D.N.J. Jan. 2, 1985), Omaha urges application of *Merrill* to this case. Unlike the instant case, *Seavers* involved a contract claim against the government rather than a tort claim against a private party.