

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-1998

# Van Holt v. Liberty Mutl Fire

Precedential or Non-Precedential:

Docket 97-5098

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation
"Van Holt v. Liberty Mutl Fire" (1998). *1998 Decisions.* Paper 103.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/103

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 11, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5098

RE VAN HOLT
JO VAN HOLT,
        Appellants,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY
LIBERTY MUTUAL GROUP

Appeal from the United States District Court
For the District of New Jersey
D.C. No.: 95-cv-06432

Submitted Under Third Circuit LAR 34.1(a)
January 23, 1998

Before: SLOVITER, LEWIS, and ROSENN, Circuit Judges.

(Opinion Filed May 11, 1998)

        James F. Villere, Jr.
        Blumenstyk & Villere
        18 Bank Street
        P.O. Box 2285
        Morristown, NJ 07962
        Counsel for Appellant

Eli L. Eytan
Law Offices of Mauro C. Casci
739 Leonardville Road
P.O. Box 90
Leonardo, NJ 07737
Counsel for Appellee

OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents this Court with an important question of first impression pertaining to federal subject-matter jurisdiction over a complaint by an insured predicated on the National Flood Insurance Act of 1968 ("NFIA") but actually sounding in tort. The plaintiffs' complaint alleges that Liberty Mutual Fire Insurance Company ("Liberty Mutual"), a private insurer, violated New Jersey state law during its investigation and adjustment of a claim under a policy issued by it pursuant to the NFIA. The plaintiffs do not allege diversity of citizenship but assert exclusive federal jurisdiction under the NFIA. Although the parties and the United States District Court for the District of New Jersey did not address this issue, we have an independent duty to determine whether the district court had subject-matter jurisdiction. We vacate the district court's judgment in favor of Liberty Mutual and remand the case with instructions to dismiss the complaint.*

I.

The plaintiffs, Re and Jo Van Holt, own a home in Sea Bright, New Jersey. The town of Sea Bright is located on a narrow strip of land bounded by the Shrewsbury River on one side and the Atlantic Ocean on the other. The Van Holts' home is located in an area that floods frequently. In October 1991, Sea Bright was flooded, resulting in damage to the Van Holts' home and personal property. In

_____

* Although Judge Lewis heard argument in this case, he has been unable, however, to clear this written opinion because of illness.

2

connection with this flood, the Van Holts filed two claims with their insurer, the defendant, Liberty Mutual. Liberty Mutual paid the claims by check in the Summer of 1992. The Van Holts received and cashed Liberty Mutual's checks without objection. On December 11, 1992, the Van Holts' home and personal property were again damaged by flooding which resulted from high winds and rain. The present dispute between the Van Holts and Liberty Mutual primarily centers on the damage caused by the December 11 flood.

The Van Holts held two insurance policies issued by Liberty Mutual, the first was a homeowner's policy, the other was a flood insurance policy issued pursuant to the National Flood Insurance Program ("NFIP"). See 42 U.S.C. SS 4001-129 (codification of the NFIA). The Van Holts made claims on both policies for the damages resulting from the December 11 flood.1 They hired their own claims adjuster, Robert C. Ascher. Following an inspection of the Van Holts' home and property, Ascher submitted a list of damaged property to Kevin Grelle, Liberty Mutual's claims adjuster. On behalf of Liberty Mutual, Grelle refused to pay the claimed damages because the list was incomplete. According to a letter from Grelle to Ascher dated June 7, 1993, Grelle rejected Ascher's list because it did not set forth the values of the items claimed and the Van Holts had not signed each page as required by the insurance policies.

When six months passed without payment of their claims, in June of 1993, the Van Holts, through Ascher, filed a complaint against Liberty Mutual with the New Jersey Department of Insurance. The department forwarded the complaint to Liberty Mutual and requested that the company provide the reasons why the claim was taking so long to evaluate. In response, Grelle stated that he believed that the Van Holts had attempted to defraud Liberty Mutual by inflating the extent of their damages and claiming damage to property that had been destroyed or damaged, not in the December 11 flood, but in the earlier October 1991 flood. In his investigation report, Grelle

_____

1. Because the claims made under the homeowner's policy do not affect the result in this case, we do not discuss them.

3

stated that, among other things, the Van Holts made claims for damage to property stored in the basement of their home which was caused by the October 1991 flood. Liberty Mutual had denied coverage for this damage when it partially paid the October 1991 claim because theflood insurance policy excluded coverage for damage to property stored in the insured's basement. After additional investigation, including an under-oath examination of the Van Holts by Liberty Mutual's attorneys, on June 16, 1995, Liberty Mutual formally denied the Van Holts' claims on the ground that they were fraudulent.

On December 15, 1995, the Van Holts sued Liberty Mutual in the United States District Court for the District of New Jersey. In their complaint, the Van Holts alleged that Liberty Mutual committed two state-law torts and asserted that subject-matter jurisdiction was proper pursuant to 42 U.S.C. S 4053, a provision of the NFIA.2 They cited no other statutory provision. Specifically, the plaintiffs averred that Liberty Mutual's failure to pay their claims and the company's allegation that the claims were fraudulent violated the New Jersey Consumer Fraud Act, N.J.S.A. SS 56:8-1 to 56:8-48, and New Jersey common law requiring parties to an insurance contract to act in good faith. See Pickett v. Lloyd's, 621 A.2d 445, 451-52 (N.J. 1993); see also Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997) (discussing duty of good faith in

_____

2. 42 U.S.C. S 4053 provides:

> The insurance companies and other insurers which form, associate, or otherwise join together in the pool under this part may adjust and pay all claims for proved and approved losses covered by flood insurance in accordance with provisions of this chapter and, upon disallowance by any such company or other insurer of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance
> of the claim, may institute an action on such claim against such company or other insurer in the United States district court for the
> district in which the insured property or major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

other contractual contexts). Following discovery, the district court entered summary judgment for Liberty Mutual. The Van Holts filed a timely notice of appeal. We vacate the district court's December 2, 1996 judgment and remand this case with instructions to dismiss for lack of subject-matter jurisdiction.

II.

It is undisputed that Liberty Mutual issued theflood insurance policy to the Van Holts pursuant to the NFIP. The NFIP is a federally supervised and guaranteed insurance program presently administered by the Federal Emergency Management Agency ("FEMA") pursuant to the NFIA and its corresponding regulations. See 44 C.F.R. SS 59.1-77.2. Congress created the program to, among other things, limit the damage caused by flood disasters through prevention and protective measures, spread the risk of flood damage among many private insurers and the federal government, and make flood insurance "available on reasonable terms and conditions" to those in need of it. See 42 U.S.C. S 4001(a)(1)-(4).

Initially, under what is referred to as Part A of the NFIA, a pool of private insurance companies issued flood insurance policies and administered the NFIP pursuant to a contract with the United States Department of Housing and Urban Development. See 42 U.S.C. SS 4051-53; see generally Spence v. Omaha Indem. Ins. Co., 996 F.2d 793, 794 n.1 (5th Cir. 1993) (discussing the initial workings and organization of the program under the Act); Berger v. Pierce, 933 F.2d 393, 394-96 (6th Cir. 1991) (same). Under Part A, if a pool company refused to pay a claim under aflood insurance policy, the insured was permitted to sue the pool insurance company "on ... [the] claim" in federal district court regardless of the amount in controversy. See 42 U.S.C. S 4053.

On January 1, 1978, pursuant to 42 U.S.C. S 4071, HUD ended its contractual relationship with the association and assumed greater responsibility for operating the NFIP, although still maintaining the assistance of the private insurance industry. See generally In re Estate of Lee, 812

5

F.2d 253, 256 (5th Cir. 1987) (discussing HUD takeover of NFIP); National Flood Insurers Ass'n v. Harris, 444 F. Supp. 969 (D.C. 1977) (same). This arrangement, which is presently in force, is called Part B. FEMA began administering the NFIP through the Flood Insurance Administration.

In 1983, pursuant to regulatory authority granted by Congress in 42 U.S.C. S 4081(a), FEMA created the "Write Your Own" program. See 44 C.F.R. 62.23–24. Under this program, private insurance companies like Liberty Mutual write their own insurance policies, issue them to those in need of flood insurance, hold premiums from those policies in accounts separate from their other business, and pay necessary claims and refunds out of the segregated accounts. See 44 C.F.R. S 62.23(a); 44 C.F.R. Pt. 62, App. A, Arts. II(E), (D); see also Spence, 996 F.2d at 794 n.1. FEMA guarantees payment of claims through letters of credit issued on behalf of the private insurance companies which may be tapped in the event that the claims against policies exceed a company's net premium income. See 44 C.F.R. Pt. 62, App. A, Art. IV. FEMA also provides reinsurance. The private insurance companies must use the Standard Flood Insurance Policy ("SFIP"), which is contained in the regulations. See 44 C.F.R. Pt. 61, App. A(1). Under Part B, an insured may sue FEMA if it adjusts a claim and improperly refuses to pay benefits. See 42 U.S.C. S 4072.3

_____

3. Section 4072 provides:

> In the event the program is carried out as provided in section 4071 of this title, the Director shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

6

The parties have not raised any question whether the district court had subject-matter jurisdiction of the Van Holts' complaint and the district court did not consider the matter. It is central to our federal system that, unlike the state courts, the federal courts are courts of limited jurisdiction. "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) (citation omitted). Accordingly, a federal court of appeals has a special obligation to satisfy itself of the district court's basis for subject-matter jurisdiction even if the parties are prepared to concede it. Id.; Pennsylvania Nurses Ass'n v. Pennsylvania State Educ. Ass'n, 90 F.3d 797, 800 (3d Cir. 1996), cert. denied, 117 S. Ct. 947 (1997); Lyon v. Whisam, 45 F.3d 758, 759 (3d Cir. 1995). Generally, the federal courts have subject-matter jurisdiction of a complaint when it asserts a cause of action arising under some provision of federal law, see 28 U.S.C. S 1331, such as when Congress creates a cause of action within the bounds of Article III of the United States Constitution, or when the parties are of diverse citizenship and the amount in controversy exceeds the jurisdictional minimum, which at the time this case was filed was $50,000. See 28 U.S.C. S 1332 (1995).

In accordance with our duty to raise subject-matter jurisdiction, on March 28, 1998, we requested counsel for the parties to submit supplement briefs on the issue of jurisdiction. In their supplemental brief, the Van Holts argued that subject-matter jurisdiction was proper in the federal court because they sought damages "under" the flood insurance policy and that, in 42 U.S.C. S 4053, Congress granted to the federal courts "exclusive jurisdiction ... over disputes involving flood insurance policies." Liberty Mutual also believes that the district court had subject-matter jurisdiction because the gravamen of the claims related to "the processing and denial of the flood claim." It conceded, however, that "the complaint is problematic as the only counts of the complaint read as consumer fraud and bad faith claims" and acknowledged that the Van Holts' complaint does not contain a claim for "benefits under the flood policy."

7

In their complaint, the plaintiffs assert that federal subject-matter jurisdiction is proper pursuant to 42 U.S.C. S 4053 and a provision in the Standard Flood Insurance Policy governing the relationship between Liberty Mutual and the Van Holts, which provides:

> You may not sue us to recover money under this policy unless you have complied with all of the requirements of the policy. If you do sue, you must start the suit within 12 months from the date we mailed you notice that we have denied your claim, or part of your claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of the loss.

44 C.F.R. Pt. 61, App. A(1), Art. 9(R) (italics in original).

We first consider the statutory basis for jurisdiction. It is axiomatic that when a court interprets a statute, its sole task is to ascertain the statute's meaning and enforce it according to its terms. United States v. Ron Pair Enter., Inc., 489 U.S. 235, 241 (1989) (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)). When considering such a question, the inquiry must begin with the plain language of the statute itself. Id. at 241; United States v. Schneider, 14 F.3d 876, 879 (3d Cir. 1994). That is because the best evidence of congressional intent is the text of the statute. See West Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 98 (1990); Schneider, 14 F.3d at 879. The court, however, must look not only to the particular statutory language, but to the design of the statute as a whole and its objectives and policies. See Crandon v. United States, 494 U.S. 152, 158 (1990); Schneider, 14 F.3d at 879.

It is apparent from the plain language of S 4053, that it provides subject-matter jurisdiction only for a coverage, or breach of contract, cause of action based on a denial of an insurance claim and not for state-law torts which arise out of the claims investigation and adjustment procedure executed by the insurance company. Section 4053 provides that an insured may institute a lawsuit on a "claim" on the policy when the claim has been "disallow[ed]." We interpret this language to refer only to suits challenging the failure to pay the insurance "claim." The language makes no explicit

or implicit reference to other causes of action that may arise during a claims investigation. Indeed, if claims like the Van Holts' were allowed in federal court it would not be necessary for the insurance company to first deny coverage. Conceivably, the insurance company could commit state-law torts even when it pays the claim, by delaying payment or engaging in other misconduct in the adjustment process. Congress could have chosen to use broader language, such as "relating to the insurance policy" or "relating to the claim's investigation or adjustment." It chose not to do so. Thus, we must respect Congress' choice and cannot add language to the statute where none exists.

In their complaint, the Van Holts do not assert a cause of action "on ... [their] claim" under the Liberty Mutual flood insurance policy. As the defendant acknowledges, the Van Holts do not assert that Liberty Mutual's failure to pay the claim was a breach of the flood insurance policy or request that the district court order that Liberty Mutual cover their losses. Instead, the plaintiffs, citing New Jersey state law, claim that Liberty Mutual committed two torts in the course of the investigation and adjustment of their insurance claims and request damages to compensate them for their losses suffered as a result of these torts and to punish Liberty Mutual for committing the torts.[4]

Neither the plain language nor the object and policies of the NFIA and its regulations tend to show that Congress intended to provide for subject-matter jurisdiction for state-law torts arising out of flood insurance polices. See Spence, 996 F.2d at 796. Indeed, the legislative history of S 4053 specifically states that, even though claimants may sue for coverage in federal court, they maintain the right to pursue

_____

4. Liberty Mutual contends that there is federal subject-matter jurisdiction for a claim under state bad-faith law because such a claim is a contract claim. See Pickett, 621 A.2d at 452 (refusing to characterize
bad faith claim as having basis in tort or contract law). This argument is unpersuasive because federal law, namely the language of S 4053, determines what claims are permitted in federal court and there is no evidence that Congress intended to incorporate state bad-faith law into S 4053. Cf. Spence, 996 F.2d at 796 (in statute of limitations issues, federal interests in regulation of flood insurance do not require that state
law be disregarded when insured asserts state-law torts against insurer).

9

other "legal remedies in State courts." H.R. Rep. No. 1585, reprinted in 1968 U.S.C.C.A.N. 2873, 3022; see also Possessky v. National Flood Insurers Ass'n, 507 F. Supp. 913, 915 (D. N.J. 1981) (quoting House of Representatives report). Also, the present regulations provide for substantial independence of the private Write-Your-Own companies in the adjustment and investigation of claims, see 44 C.F.R. S 62.23(e), do not permit the companies to draw down on the letters of credit for claims of fraud, and that the insurance companies are not agents of the federal government. Spence, 996 F.2d at 796 & ns.15-17.5

Allowing jurisdiction over claims such as the Van Holts' would have far reaching implications for the federal courts and insurance law, implications not intended by Congress. If we found subject-matter jurisdiction, we would have to conclude either that Congress intended federal courts to enforce state-law imposed duties in all flood insurance cases or that Congress intended to create a federal common law regulating insurance company practices when there is no indication that state courts and state legislatures are incapable of carrying out this function. There is no evidence either in the NFIA or the legislative history that Congress intended such a result.

Although it addressed a slightly different issue, we find the reasoning in Spence instructive. In Spence, the plaintiffs brought suit in federal district court alleging that the defendant, an insurance company, breached the flood insurance policy issued to them when it refused to cover their losses and committed torts under Texas state law during the claims adjustment and investigation procedure. The defendant argued that all the claims, including the state-law claims, were barred by the one-year suit limitations period contained in the SFIP. See 44 C.F.R. Pt. 61, App. A(1), Art. VIII(Q). The United States Court of Appeals for the Fifth Circuit rejected the defendant's argument, holding that Texas state law, and not the NFIA, provided the limitations period for the state law torts. The Spence court held that the independence granted insurance

_____

5. Section 4072 does not permit jurisdiction because it allows suit only against FEMA which is not a party to this action.

10

companies in claims adjustment, the fact that the companies are not government agents, and that companies may not draw down on letters of credit for fraud claims evidenced that Congress did not intend to federalize state-law claims in the flood-insurance context. That same reasoning applies here. There is simply no indication that Congress intended to create jurisdiction for any claims other than coverage claims.

As with S 4053, the provision in the insurance policy issued to the Van Holts--the identical one construed by the Spence court--provides only for a coverage claim. The clause narrowly provides that suit must be in federal court if the suit seeks to recover money "under this policy" and makes no mention of other causes of action or implies that they would be covered. (Emphasis added). Regardless, even if the provision allowed for a right to sue in federal court for causes of actions other than coverage claims, it is insufficient, on its own, to confer federal subject-matter jurisdiction over a complaint. It is well settled that parties cannot confer subject-matter jurisdiction either by agreement or by waiver. See, e.g., Brown v. Francis, 75 F.3d 860, 866 (3d Cir. 1996); United Indus. Workers v. Government of Virgin Islands, 987 F.2d 162, 168 (3d Cir. 1993) (collecting cases).

Finally, diversity of citizenship does not provide a basis of subject-matter jurisdiction here. The plaintiffs do not allege that the parties are diverse and we have searched the complaint in vain for any allegation of the parties' citizenship or a reference to the diversity statute. The Van Holts contend only that subject-matter jurisdiction is premised on S 4053. It is the plaintiffs' burden to allege a basis for subject-matter jurisdiction. See Fed. R. Civ. P. 8(a)(1). They have failed to do so. Hence, the complaint must be dismissed.

III.

For the foregoing reasons, the district court's December 2, 1996 judgment is vacated. This case will be remanded to the district court with instructions to dismiss for lack of subject-matter jurisdiction. Costs taxed against appellants.

11

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit

12