Alan **COHEN** and Jane **Cohen, Plaintiffs,**

v.

**STATE FARM FIRE AND CASUALTY, et al., Defendants.**

**No. CV 99–4835 AHM(BQRX).**

United States District Court, C.D. California.

Aug. 10, 1999.

Rondeau & Homampour, Charles R. Rondeau, Arash Homampour, Beverly Hills, CA, for plaintiff Alan Cohen and Jane Cohen.

Clark B. Holland, Michael T. Richmond, Thornton, Taylor, Downs, Becker, Tolson & Doherty, San Francisco, CA, for defendant State Farm Fire and Casualty.

ORDER DENYING DEFENDANT STATE FARM'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF'S THIRD CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

MATZ, District Judge.

This matter is before the Court on Defendant State Farm Fire and Casualty Co.'s motion for judgment on the pleadings as to Plaintiffs' third claim for breach of the covenant of good faith and fair dealing. This motion raises the single issue of whether an insured under a Standard Flood Insurance Policy ("SFIP") issued by a private insurer pursuant to the National Flood Insurance Act, 42 U.S.C. §§ 4001–4129 ("NFIA"), may state a claim for tortious breach of the covenant of good faith and fair dealing based upon the insurer's allegedly tortious denial of coverage. This Court concludes that the NFIA does not preempt Plaintiffs state-law tort claim and, therefore, denies Defendant State Farm's motion.

## FACTUAL ALLEGATIONS

On March 30, 1998, Plaintiffs purchased from Defendant State Farm, through its agent Di Salvo Insurance Agency, Inc., a flood insurance policy, effective April 15, 1998 through April 15, 1999. On May 5, 1998, flood waters damaged Plaintiffs' home and its contents. After Plaintiffs notified Defendant State Farm of their claim under the flood policy, by letter dated May 18, 1998, Defendant State Farm denied Plaintiffs' claim for benefits. On May 5, 1999, Plaintiffs filed this complaint alleging three claims: (1) Breach of Insurance Contract; (2) Declaratory Relief (in the form of a declaration stating that Plaintiffs "are entitled to receive, and Defendants are required to pay, benefits under the Flood Policy for the losses incurred by Plaintiffs on or about May 5, 1998"); and (3) Breach of the Implied Covenant of Good Faith and Fair Dealing. In

connection with their breach of contract claim, Plaintiffs seek compensatory damages. In connection with their breach of the implied covenant claim, Plaintiffs seek compensatory and punitive damages and attorneys' fees.

## STANDARDS FOR A MOTION FOR JUDGMENT ON THE PLEADINGS

■ Like a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) may be granted only when, "taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir.1996).

## DISCUSSION

Plaintiffs' third claim alleges that "[i]n every contract of insurance, including the Flood Policy, there is an implied covenant of good faith and fair dealing requiring the insurer not to do anything that would injure or prejudice the insured's rights, not to wrongfully deny any benefits due under the policy, and not to place its own interest over those of the insured." Complaint at ¶ 28.[1] According to the Complaint, Defendant State Farm violated the implied covenant of good faith and fair dealing by engaging in the following conduct:

(a) Failing to truly and accurately inform Plaintiffs as to their rights under the Flood Policy;

(b) Unreasonably withholding benefits due under the Flood Policy;

(c) Failing to evaluate Plaintiff's claims competently and objectively and to fairly investigate grounds for payment of benefits under the Flood Policy;

(d) Employing an unduly restrictive interpretation of the exclusions under the Flood Policy;

(e) Denying payment of benefits under the Flood Policy in spite of substantial evidence of Plaintiffs' entitlement thereto.

Complaint at ¶ 30. Plaintiffs seek compensatory damages, including the recovery of personal funds expended to repair and replace damaged property, physical injuries, and emotional distress. *Id.* at ¶ 33. Plaintiffs also seek punitive damages (*id.* at ¶ 35), interest and attorneys' fees. *Id.* at p. 8 (Prayer for Relief).

The sole grounds on which Defendant State Farm seeks judgment on this claim is that federal law does not provide a cause of action for breach of the implied covenant of good faith and fair dealing in connection with a Flood Policy and that, to the extent Plaintiffs' complaint may be construed to allege a state-based supplemental claim for breach of the implied covenant, the NFIA preempts such a claim. Plaintiffs' opposition states that they do not intend to state a federal common law claim for breach of the implied covenant. Instead, they argue that the NFIA does not preempt their state law tort claim.

### A. General Preemption Principles.

The Supreme Court has explained that there are three ways in which federal law will preempt a state law:

First, Congress can define explicitly the extent to which its enactments pre-empt state law. . . .

Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to

---

1. Although Plaintiffs' complaint does not specifically state whether this claim is brought as a federal common law tort claim or a state law claim brought pursuant to this Court's supplemental jurisdiction, Plaintiffs' opposition makes clear that they intend to state a supplemental state law tort claim. Plaintiffs' Opposition at 1 ("Defendant's Motion should be denied as Plaintiffs' state law cause of action for breach of the implied covenant is not preempted by the National Flood Insurance Act.") (emphasis omitted).

supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Although this Court has not hesitated to draw an inference of field pre-emption where it is supported by the federal statutory and regulatory schemes, it has emphasized: "Where ... the field which Congress is said to have pre-empted" includes areas that have "been traditionally occupied by the States," congressional intent to supersede state laws must be "clear and manifest." [2]

Finally, state law is pre-empted to the extent that it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. General Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990) (citations omitted) (holding that nuclear fuel production employee's state law claim for intentional infliction of emotional distress was not preempted by the Energy Reorganization Act). These categories are not "rigidly distinct;" in particular, "conflict" and "field" preemption often overlap. *Id.* at 79 n. 5, 110 S.Ct. 2270.

■ The party contending that a claim is preempted bears the burden of establishing preemption. *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n. 6 (9th Cir. 1995).

**B. Application of Preemption Principles.**

**1. Overview of the National Flood Insurance Act.**

In the National Flood Insurance Act, 42 U.S.C. §§ 4001–4129, Congress established the National Flood Insurance Program ("NFIP") to provide federally subsidized flood insurance at or below actuarial rates. *Wagner v. Director, Federal Emergency Management Agency*, 847 F.2d 515, 516 (9th Cir.1988). "The congressional purpose behind establishing national flood insurance was to alleviate the personal hardship and economic distress created by flooding by making flood insurance coverage available upon reasonable terms and conditions." *Bolton v. Giuffrida*, 569 F.Supp. 30, 35 (N.D.Cal.1983) (*citing* 42 U.S.C. § 4001(a), (b)). Since 1979, the NFIP has been administered by the Director of the Federal Emergency Management Agency ("FEMA"). *Id.*

By regulation, FEMA has delegated authority to issue flood policies under the NFIP to "Write Your Own" ("WYO") private insurance companies. 44 C.F.R. § 61.13(f). In issuing the policies, the WYOs must adhere to the exact language prescribed by the federal regulations, which cannot be altered absent express authorization of the FEMA Director. 44 C.F.R. Part 61, App. A(1); §§ 61.5(i), 61.13(a), (d). The resulting policy contract is a Standard Flood Insurance Policy ("SFIP"). *Id.* WYOs issue SFIPs in their own names, collect the premiums, and "arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the Program." 44 C.F.R. § 62.23(d).

**2. Defendant State Farm's Preemption Argument.**

■ Defendant State Farm does not contend that the NFIA contains an express preemption provision. *See also Spence v. Omaha Indemnity Insurance Co.*, 996 F.2d 793, 797 n. 20 (5th Cir.1993) ("The NFIA contains no express preemption provision"). Instead, Defendant State Farm makes arguments under both con-

---

**2.** Insurance is a subject traditionally governed by state law. 15 U.S.C. § 1012(a) (McCarran–Ferguson Insurance Regulation Act, § 2(a)) ("The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.")

flict and field preemption. Specifically, it argues that Plaintiffs' state law claim for breach of the implied covenant is preempted because: (1) the NFIA requires that "a national uniform body of law be adopted regarding the interpretation of the flood insurance policy provisions"; (2) allowing tort claims would frustrate the specific objective of the NFIP because, if insurers were subject to tort liability, they would withdraw from the federal program since FEMA sets premiums which the insurers could not increase to reduce their exposure; and (3) allowing tort claims would disrupt State Farm's relationship with FEMA because FEMA's regulations comprehensively address the reimbursement to which a WYO is entitled. These arguments are not persuasive.

■ Defendant State Farm is correct that federal common law governs the interpretation of SFIPs. *McHugh v. United Service Automobile Assn.*, 164 F.3d 451, 454 (9th Cir.1999) ("The law is clear that, as contracts, SFIPs issued under the [NFIP] are governed by federal law applying standard insurance law principles."). *See also* Richmond Decl.Exh. A (Flood Policy) at Article 11 ("This policy is governed by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, et seq.) and Federal common law."). The purpose of this rule is to provide a "uniformity of decision" in the interpretation of flood policy terms. *Seattle Fur Exchange, Inc. v. Foreign Credit Insurance Assn.*, 7 F.3d 158, 160 (9th Cir. 1993) (*citing Brazil v. Giuffrida*, 763 F.2d 1072, 1074–75 (9th Cir.1985)). That federal common law governs the *interpretation* of a flood insurance contract, however, does not mean that federal common law governs or even addresses the question of whether an insured may bring a common law tort claim under state law against the carrier for its *conduct* in administering the policy. In fact, several courts have expressly applied state law to claims concerning the allegedly improper handling of a claim made under an SFIP.

For example, in *Zumbrun v. United Services Automobile Assn.*, 719 F.Supp. 890 (E.D.Cal.1989), insureds brought a breach of contract claim against the insurer who issued their NFIA policy. On summary judgment, the insureds argued that the insurer waived many of its affirmative defenses when it failed to specify them in its letter denying their claim. After analyzing whether to apply federal or state law to the waiver issue, the Court concluded that "no federal purpose would be defeated by the adoption of state law as the rule of decision in cases involving the handling of claims." *Id.* at 894. The Court reasoned that because NFIA regulations specifically state that WYO companies are not agents of the federal government and are "solely responsible for [their] insureds," the NFIA was not intended to supplant the well-established state laws concerning the conduct of insurers. *Id.* (citing 44 CFR pt. 62 App. A, art. XVI). As it explained:

> Application of state law governing the relationship between insurers and their insureds would not significantly affect the substantive provisions of the standard flood insurance contract nor related aspects of the program, such as the federally-mandated rate structure and premium levels. Indeed, where, as in California, state law has evolved rigorous and well-defined standards of conduct regulating insurers operating within their borders, one federal goal, the achieving of an efficient national flood insurance program would appear well-served by adherence to those standards.

*Id.* at 894–95. In *dicta*, the Court expressly addressed Defendant State Farm's concern that tort damage awards could upset the rate structure or affect the willingness of insurers to participate in the program. It observed:

> It is true that a state's law affecting the scope of damages relative to the handling of claims may make participation in the program more expensive, thus indirectly affecting either the rate structure or the willingness of private insur-

ers to participate in the program. Thus, allowing tort damages for mishandling of the claims might arguably affect federal interests. Such an effect would appear to be sufficiently remote as not to require application of a federal standard. *Id.* at 894 n. 3. Here, although Defendant State Farm argues that allowing tort claims would frustrate federal interests, it fails to meet its burden of demonstrating precisely how or to what extent those interests would be adversely affected.[3]

The only circuit court to address the issue of whether state tort law may be invoked in litigation under the NFIA, the Fifth Circuit, appears to have arrived at different conclusions. In *Spence v. Omaha Indemnity Insurance Co.,* 996 F.2d 793 (5th Cir.1993), an insured brought a breach of contract claim and a tort claim for fraud after the insurer denied his claims under an SFIP. The insurer argued that the insured's fraud claim was barred because it was subject to the one-year statute of limitations in the SFIP, not the four-year statute of limitations under state law. The Fifth Circuit disagreed, holding that the NFIA did not preempt the state's statute of limitations period. It explained:

> While the national policies underlying the NFIP and extensive federal role therein impel our conclusion that federal common law governs claims under flood insurance policies, the same does not apply in actions for tortious misrepresentation against WYO insurers. FEMA regulations accord substantial autonomy to WYO companies in SFIP marketing and claims adjustment, and expressly provide that "WYO Companies shall not be agents of the Federal Government." Further, while WYO insurers may draw on FEMA letters of credit to pay SFIP claims, the WYO–FEMA agreement does not permit such draws to cover a WYO company's liability for fraud. The

more attenuated federal interests in such claims lead to our conclusion that the limitations period governing them derives from state rather than federal law. Article VIII(Q) of the SFIP concerns only suits "to recover money under this policy." Likewise, 42 U.S.C. § 4072 addresses itself solely to actions arising from partial or complete disallowance of flood insurance policy claims. Neither provision sets a limitations period governing tort actions based on misrepresentations concerning the SFIP, as opposed to contract claims under the SFIP itself. Absent express preemption of state law fraud actions against WYO insurers or conflict with any federal provision, we conclude that the Spences timely filed their action for misrepresentation under the four-year Texas limitations period.

*Id.* at 796–97 (footnotes omitted). In so holding, the Court also rejected the insurer's argument that the policy's choice of law provision precluded application of the state limitations period to the tort claim. The Court explained that that provision refers only to interpretation of the contract, not all claims arising out of the insurance relationship. *Id.* at 796 n. 19 ("Omaha suggests that the SFIP choice-of-law clause, which provides '[t]his policy is governed by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended ... and Federal common law' requires an opposite result. We disagree. The clause to which Omaha points refers only to the SFIP itself, and does not purport to subject tortious conduct of WYO insurers to otherwise inapplicable federal law.").

On the other hand, in *West v. Harris,* 573 F.2d 873 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979), insureds sought attorneys' fees and statutory penalties under state law for the

---

**3.** Although Plaintiffs cite to *Stevens v. Bankers Ins. Co.,* 970 F.Supp. 769 (N.D.Cal.1997) for the proposition that at least one district court in a published decision permitted a tortious breach of the implied covenant claim to go forward against a WYO for non-payment of a

claim under an SFIP, Defendant is correct that that case has only limited precedential value, because the insurer never raised, and thus the Court never addressed, the issue of whether the NFIA may preempt such a claim.

insured's alleged wrongful denial of their claim under an SFIP. The Fifth Circuit rejected those claims for relief, concluding that to further the federal interest of uniformity of decision in actions under the NFIA, "a prevailing plaintiff in a suit on a flood insurance policy issued pursuant to the National Flood Insurance Act is not entitled to recover the statutory penalty and attorney's fees allowed by state insurance law for arbitrary denial of coverage." *Id.* at 881.[4]

Unlike *West, Spence* specifically considered the issue in terms of all preemption considerations, while *West* confined its analysis to the issue of achieving "uniformity of federal decisions"—only one component of federal preemption principles.[5] Moreover, *Spence* recognized the significant changes to the NFIA and its regulations which have been implemented since the decision in *West.* The changes in those statutes and regulations make it clear that Congress and FEMA (in adopting implementing regulations) contemplated state-based tort claims being brought against WYOs. Specifically, in 1981, Congress enacted 42 U.S.C. § 4081(c) which provides that FEMA "may not hold harmless or indemnify an agent or broker for his or her error or omission." *See* Public Law 97–35 (August 13, 1981), 95 Stat. 357 (codified at 42 U.S.C. § 4081(c)). *See also* 44 CFR Pt. 62 App. A Art. IX ("Errors and Omissions").[6] Since there is no provision in the NFIA for holding insurers liable for errors or omissions, the most logical conclusion to be drawn from this statutory provision is that Congress contemplated that state tort law could apply to the conduct of insurers. In addition, in 1997, FEMA first proposed (at 62 Fed.Reg. 23736) and finally adopted in October 1997 (at 62 Fed.Reg. 39908) the provisions in 44 CFR Pt. 52 App. A concerning FEMA's nonpayment of litigation costs incurred for conduct taken outside the scope of the FEMA–WYO relationship.[7] Again, a logi-

---

**4.** *Spence* cited its previous decision in *West* only for the proposition that "federal common law governs claims under flood insurance policies." *Spence,* 996 F.2d at 796 and n. 14 (citing *West* and *Mason Drug Co. v. Harris,* 597 F.2d 886 (5th Cir.1979) (applying, without discussion, federal law to flood policy interpretation case)). *Spence* acknowledged that *West* held that "prejudgment interest and penalties for arbitrary denial of claims in an action seeking recovery on a flood insurance policy" were not available, but nevertheless held that an insured may bring a tort claim for misrepresentation against the insurer. *Spence,* 996 F.2d at 796 and n. 14.

**5.** The *West* Court's failure to consider the issue in terms of preemption resulted in its failure to apply the general principles and presumptions of preemption analysis, particularly those providing that "where the field which Congress is said to have pre-empted [is an] area [such as insurance] that ha[s] been traditionally occupied by the States, congressional intent to supersede state laws must be 'clear and manifest.'" *English,* 496 U.S. at 78–79, 110 S.Ct. 2270.

**6.** 44 CFR Pt. 62 App. A Art. IX provides in pertinent part:
The parties shall not be liable to each other for damages caused by inadvertent delay, error, or omission made in connection with any transaction under this Arrangement.
In the event of such actions, the responsible party must attempt to rectify that error as soon as possible after discovery of the error and act to mitigate any costs incurred due to that error. In the event that steps are not taken to rectify the situation and such action leads to claims against the company, the NFIP, or other related entities, *the responsible party shall bear all liability attached to that delay, error or omission to the extent permissible by law.* (Emphasis added.)

**7.** 44 CFR Pt. 62 App. A Art. III(4) currently provides in pertinent part:
Limitation on Litigation Costs. Following receipt of notice of such claim, the Office of General Counsel (OGC), FEMA, shall review the information submitted. If it is determined that the claim is grounded in actions by the Company *that are outside the scope of this Arrangement,* the National Flood Insurance Act, and 44 CFR chapter 1, subchapter B, and/or involve issues of insurer/agent negligence as discussed in Article IX of this Arrangement, the OGC shall make a recommendation to the Administrator as to whether the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement. *In the event the Administrator determines that the claim is grounded in actions by the*

cal conclusion that may be drawn from these regulations is that FEMA, too, assumed that insurers selling SFIPs may sometimes be held liable under state tort laws for their conduct in connection with the NFIP.[8] In arriving at its conclusion, the *Spence* court specifically referenced these provisions. *See Spence,* 996 F.2d at 796 n. 17.[9]

Given the change in law recognized by *Spence,* and given the fact that *Spence* specifically considered the issue of preemption, this Court finds more persuasive the Court's conclusion in *Spence* that state tort law may be applied to claims concerning improper handling or claims arising out of the insured-insurer relationship.[10]

Defendant State Farm also argues that this Court should follow the December 2, 1998 order of the district court in *Bianchi v. State Farm Fire and Casualty Co.,* C–98–29722–JW (N.D.Cal.1998). In that order, the district court granted State Farm's motion to dismiss plaintiffs' state law claim for breach of the implied covenant of good faith and fair dealing concerning a policy issued under the NFIA. Relying upon 42 U.S.C. § 4053, that Court reasoned that "[a] plain reading of the NFIA supports the Court's conclusion that Plaintiffs' bad faith claim is preempted by the NFIA." *Bianchi* Order at 5. Section 4053 of the NFIA provides district courts with jurisdiction to review the denial of a claim issued under Part A of the NFIP. It provides:

> The insurance companies and other insurers which form, associate, or other-

---

*Company that are significantly outside the scope of this Arrangement,* the Company will be notified, in writing, within thirty (30) days of the Administrator's decision, *if the decision is that any award or judgment for damages arising out of such actions will not be recognized under Article III of this Arrangement as a reimbursable loss cost,* expense or expense reimbursement. In the event that the Company wishes to petition for reconsideration the determination that it will not be reimbursed for the award or judgment made under the above circumstances, it may do so by . . . [setting forth petition for reconsideration process]. (Emphasis added.)

8. Both 42 U.S.C. § 4081(c) and 44 CFR Pt. 62 App. A Arts. III(4) and IX also undermine State Farm's argument that allowing tort claims would disrupt an insurer's financial relationship with FEMA, in that they specifically preclude insurers from obtaining reimbursement from FEMA for expenses incurred as a result of their participation in the NFIP.·

9. The *Spence* Court explained:
That agreement, which FEMA has incorporated into regulations governing the NFIP, *see* 44 CFR § 62.23(a), permits reimbursement of WYO companies for "payments as a result of awards or judgments for damages arising under the scope of this Arrangement, policies of flood insurance issued pursuant to this Arrangement, and the claims processing standards and guides set forth at Article II, Section A, 2.0 of this Arrangement." 44 CFR Pt. 62, App. A, Art. III, Section D(2). It also calls for reimbursement of loss adjustment expenses and premium refunds. 44 C.F.R. Pt. 62, App. A, Art. III, Secs. (C), (E). These provisions plainly do not contemplate reimbursement for judgments on tort claims such as those asserted by the Spences. *See also* 42 U.S.C. § 4081(c) ("The Director of the Federal Emergency Management Agency may not hold harmless or indemnify an agent or broker for his or her error or omission."). 996 F.2d at 796 n. 17

10. Neither *Durkin v. State Farm Mutual Ins. Co.,* 3 F.Supp.2d 724 (E.D.La.1997) nor *Friedman v. South Carolina Ins. Co.* 855 F.Supp. 348 (M.D.Fla.1994), two cases cited by Defendant, are persuasive. In these cases, the Courts held that the insureds' "extracontractual claims" for penalties, attorneys' fees and punitive damages were preempted by the NFIA. Both of these Courts relied only upon *West,* and failed to even cite *Spence* or *Zumbrun.* They also failed to consider 42 U.S.C. § 4081 and the pertinent regulations governing litigation liability an insurer may not pass along to FEMA. Moreover, the *Durkin* Court was of the mistaken view that all such claims would ultimately be paid by the government, not the insurer. 3 F.Supp.2d at 729 ("Although private insurance companies administer the insurance contracts, the federal government acts as the guarantor for all claims. Thus, any damages that are payable to the claimant are paid out of the government's pocket."). Finally, the *Durkin* Court's ruling on the extracontractual damages issue was *dicta* because it had already concluded that the insured's breach of contract claim failed. *Id.* at 728.

wise join together in the pool under this part may adjust and pay all claims for proved and approved losses covered by flood insurance in accordance with the provisions of this chapter and, *upon the disallowance by any such company or other insurer of any such claim,* or upon the refusal of the claimant to accept the amount allowed upon any such claim, *the claimant,* within one year after the date of mailing of notice of disallowance or partial disallowance of the claim, *may institute an action on such claim against such company or other insurer in the United States district court* for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4053 (emphasis added). As the Third Circuit recognized in *Van Holt v. Liberty Mutual Fire Insurance Co.,* 163

F.3d 161 (3rd Cir.1998), however, § 4053 applies only to claims brought under Part A of the NFIP; 42 U.S.C. § 4072 governs the district court's jurisdiction for claims brought under Part B of the NFIP. *Id.* at 166. Here, both parties agree that Plaintiffs' policy was issued under Part B of the NFIP. (For purposes of this discussion, however, there are no substantive differences between those two sections.)

Relying on the Third Circuit's initial opinion in *Van Holt, supra,* published at 143 F.3d 783 (3rd Cir.1998), the *Bianchi* Court reasoned that, because § 4053 references only suits based on the denial of a "claim," Congress must have intended to restrict federal court jurisdiction to suits seeking to recover benefits to the exclusion of state-based tort claims. *Bianchi* Order at 5.[11]

■ This Court disagrees. Although § 4072 (or § 4053 for that matter) clearly does provide federal court jurisdiction over claims that an insurer failed to pay a claim

---

11. The *Bianchi* Court explained:

> The Court interprets this language to refer to claims challenging the insurer's failure to pay a "claim." However, it is important to note that the language makes no mention of other causes of action that may be brought as a result of the insurer's failure to pay a claim. At least one court has noted that Congress could have chosen to use broader language, such as "relating to the insurance policy" or "relating to the claim's investigation or adjustment," but chose not to do so. *Van Holt v. Liberty Mutual Fire Ins. Co.,* 143 F.3d 783, 787 (3rd Cir.1998). Since Congress intended to choose such narrow language when it drafted the NFIA, a plain reading of the statute indicates that other causes of action, including state claims, are not cognizable under the NFIA.

*Bianchi* Order at 5. *See also Stapleton v. State Farm Fire and Casualty,* 11 F.Supp.2d 1344, 1346 (M.D.Fla.1998) (striking insured's extra-contractual damages claims because "[n]owhere [in section 4053] is there explicit language indicating or referring to other causes of action that may arise out of a claims investigation."). In *Van Holt,* an insured brought only state law claims under a policy issued under the NFIA, claiming federal question jurisdiction under § 4053. In its initial opinion, the Third Circuit concluded that § 4053

provided subject matter jurisdiction only for coverage claims "and not for state-law torts which arise out of the claims investigation and adjustment procedure executed by the insurance company." 143 F.3d at 787. Because there was no diversity jurisdiction, the Court vacated the judgment and ordered the case dismissed for lack of subject matter jurisdiction. *Id.* at 787–89. The Court did not discuss whether the NFIA preempted the insured's state law claims. A few days prior to the date the district court issued its *Bianchi* order, the Third Circuit vacated its initial *Van Holt* opinion and issued a new opinion published at 163 F.3d 161 (3rd Cir.1998). In the revised opinion, the Court concluded that the district court *did have* subject matter jurisdiction over the insureds' state law claims. It stated: "We now determine that Congress, had it considered the specific question, would have intended to confer original exclusive jurisdiction on the district court over claims sounding in tort arising out of the investigation or adjustment or insurance policies arising out of the administration and sale of insurance under the NFIA." 163 F.3d at 167. Nevertheless, because it concluded that the insureds failed to produce sufficient evidence on summary judgment to succeed on their state-law claims, the Court declined to rule upon whether the NFIA preempts such state-law claims. *Id.* at 169 n. 6.

under an SFIP, nothing in the language of section 4072 shows a "clear and manifest" (*English,* 496 U.S. at 78–79, 110 S.Ct. 2270) intention of Congress to preempt additional state-based torts for wrongful conduct under the NFIA. Section 4072 merely confers jurisdiction to entertain a failure to pay a claim; it does not preclude other claims from being considered under principles of supplemental jurisdiction. *See also* 28 U.S.C. § 1367(a) ("Except as provided in subsections (b) and (c) *or as expressly provided otherwise by Federal statute,* in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action") (emphasis and underline added).

Accordingly, because Defendant State Farm has failed to meet its burden of demonstrating that the NFIA preempts Plaintiffs' state law claim for breach of the implied covenant of good faith and fair dealing, the Court hereby DENIES Defendants' motion for judgment on the pleadings as to Plaintiffs' third claim.

IT IS SO ORDERED.