Paul W. MASON, Plaintiff,

v.

James WITT, et al., Defendants.

No. CV–F–99–5127–LJO.

United States District Court,
E.D. California.

Nov. 4, 1999.

## MEMORANDUM OPINION AND ORDER RE DEFENDANTS' MOTIONS TO DISMISS (24 & 26)

O'NEILL, United States Magistrate Judge.

Pursuant to a notice filed on July 21, 1999, Defendants James Witt and Jo Ann Howard (collectively "the Federal Defendants") seek an order dismissing the third amended complaint. Pursuant to a notice filed on July 22, 1999, Defendant Bankers Insurance Company ("Bankers") also seeks an order dismissing the third amended complaint. Plaintiff Paul W. Mason ("Plaintiff"), who is proceeding pro se in this action, has not filed an opposition to either motion.[1] Pursuant to Local Rule 78–230(c) and (h), these matters were submitted on the pleadings without oral argument. The court will address both motions herein.[2]

### FACTUAL BACKGROUND

Plaintiff alleges that, in September 1997, he heard of and read advertisements sponsored by the Federal Emergency Management Agency ("FEMA") for the National Flood Insurance Program ("NFIP"). Plaintiff alleges that the advertisements stated: " 'Get ready for El Nino! Protect your home investment! Buy flood insurance from the National Flood Insurance Program today.' " Plaintiff states that, in response to this advertisement, he purchased a Standard Flood Insurance Policy ("SFIP") from Defendant Bankers—which is a "Write–Your–Own" ("WYO") company[3]—to insure his home for $150,000.00 and the contents for $28,000.00. Plaintiff's policy was in effect from November 19, 1997, until November 19, 1998.

Plaintiff claims that, in February 1998, his home was inundated by flood water and debris, forcing Plaintiff and his family to flee. Plaintiff alleges that, due to the flood damage, his home was determined by county authorities to be unsafe and was condemned. Plaintiff states that his property is subject to recurrent flooding and that, as a result, his home must be demolished. Plaintiff filed a claim for the damage to his property. Defendant Bankers assigned Pilot Catastrophe ("Pilot")—an independent adjuster—to inspect Plaintiff's property and determine the amount of damage covered by Plaintiff's SFIP. Pilot estimated the amount of damages to be $23,622.36. Plaintiff disagreed with this estimate and submitted a claim for $150,000.00. Defendant Bankers initially denied the claim because Plaintiff failed to submit a proper proof of loss as required by the SFIP. Defendant Bankers also informed Plaintiff that he was ineligible to receive full value for his home because the

---

1. On August 20, 1999, the court denied Plaintiff's ex parte application for an extension of time within which to file an opposition. On September 3, 1999, the court issued an order striking Plaintiff's motion for reconsideration of the August 20, 1999, order due to various procedural defects.

2. Pursuant to 28 U.S.C. § 636(c) and Fed. R.Civ.P. 73, all parties to the action have consented to proceed before the United States Magistrate Judge for all purposes.

3. Pursuant to federal regulations, WYO companies are private insurance companies that write SFIPs under the NFIP.

cost to repair his home did not equal or exceed 50% of its market value. FEMA later authorized the payment to Plaintiff of the undisputed amount of the loss ($23,622.36).

Generally, Plaintiff claims that he has complied with the terms of his policy by submitting all the required claims information and that Defendant Bankers has continued to wrongfully delay and deny his claim in the full amount. Plaintiff also claims that FEMA defrauded and misinformed Plaintiff by "making false promises" in FEMA-sponsored marketing materials for the NFIP. Plaintiff claims that FEMA and the Federal Insurance Administration ("FIA")—which has ultimate responsibility for handling all SFIP claims—have violated the stated intentions and mandates of Congress with respect to the NFIP. Finally, Plaintiff claims that FEMA acted in "bad faith" by refusing to discuss or address the legal issues raised in his letters. Plaintiff seeks monetary damages against Defendant Bankers for the amount of his SFIP policy limits and for incidental damages. Plaintiff also seeks money damages against Defendant Bankers for fraud, bad faith, emotional distress, and punitive damages. In addition, Plaintiff seeks various forms of injunctive and declaratory relief against all defendants. Finally, Plaintiff seeks recovery of attorneys fees and costs.

### PROCEDURAL BACKGROUND

The original complaint in this action was filed on July 29, 1998, in the United States District Court for the Northern District of California. On August 14, 1998, Plaintiff filed a first amended complaint as a matter of right pursuant to Fed.R.Civ.P. 15 (to correct various typographical and clerical errors). On December 3, 1998, Plaintiff filed a second amended complaint pursuant to leave of court. On January 15, 1999, the action was transferred to this court incident to an unopposed motion by Plaintiff. On February 25, 1999, Defendant Bankers filed its answer to the second amended complaint. Pursuant to a stipulation of the parties, Plaintiff filed a third amended complaint on June 21, 1999, naming the Federal Defendants and Bankers as the only defendants to this action. As indicated above, the instant motions were filed on June 21, 1999, and June 22, 1999.

The Federal Defendants raise the following arguments in their motion to dismiss: (1) that Plaintiff's third amended complaint should be dismissed for lack of jurisdiction because the Federal Defendants are immune from such relief under the doctrine of sovereign immunity; and (2) that this court has no subject matter jurisdiction because Plaintiff did not file an administrative claim pursuant to the Federal Tort Claims Act ("FTCA"). Defendant Bankers argues that: (1) Plaintiff's claims are barred under the National Flood Insurance Act ("NFIA"); and (2) Plaintiff's various claims are defective as a matter of law. The court construes the motions as brought pursuant to Fed.R.Civ.P. 12(b)(1) as to both of the Federal Defendants' arguments and as to Defendant Bankers' first argument and as brought pursuant to Fed.R.Civ.P. 12(b)(6) as to Defendant Bankers' second argument.

### STANDARDS FOR MOTION TO DISMISS

In considering a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), the court must accept as true the allegations of the complaint in question, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404, reh'g denied, 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969); *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). Under the basic rule, a motion to dismiss for failure to state a claim should not be granted unless "... it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief." *See Hishon v. King*

& Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), citing Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n., 651 F.2d 1289, 1294 (9th Cir.1981).

In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), the plaintiff, as the party seeking to invoke the court's jurisdiction, always bears the burden of establishing subject matter jurisdiction. The court presumes a lack of subject matter jurisdiction until the plaintiff proves otherwise. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989). The court must also consider whether the motion to dismiss is attacking subject matter jurisdiction solely on the basis of the allegations contained in the complaint (along with any undisputed facts in the record or of which the court can take judicial notice), or whether the motion questions the existence of subject matter jurisdiction based on extrinsic evidence.

In the former situation (the facial attack), the court must consider the allegations of the complaint as true, whereas in the latter situation (the factual attack), the court makes its own determination of the facts. See DeLancie v. Birr, Wilson & Co., 648 F.2d 1255 (9th Cir.1981); Thornhill Publishing Company, Inc. v. General Telephone & Electronics Corp., 594 F.2d 730 (9th Cir.1979). Finally, any dismissal based on lack of subject matter jurisdiction is not a dismissal on the merits and, therefore, the plaintiff may seek relief in state court, if appropriate. See Cook v. Peter Kiewit Sons Co., 775 F.2d 1030, 1035 (9th Cir.1985).

In a case, such as this, where the plaintiff is pro se, the court has an obligation to construe the pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027, fn. 1 (9th Cir.1985) (en banc). Moreover, if a complaint fails to state a claim, the court must provide notice of the complaint's defi-

ciencies and the pro se litigant must be given opportunity to amend the complaint if amendment would cure the defects. See Karim–Panahi v. L.A.P.D., 839 F.2d 621 (9th Cir.1988).

## DISCUSSION

### A. Plaintiff's Claims Against the Federal Defendants

The Federal Defendants argue that Plaintiff's claims against them should be dismissed for lack of jurisdiction pursuant to the doctrine of sovereign immunity. Absent a waiver, the doctrine of sovereign immunity shields the federal government and its agencies from suit. Loeffler v. Frank, 486 U.S. 549, 554, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988); Federal Housing Administration v. Burr, 309 U.S. 242, 244, 60 S.Ct. 488, 84 L.Ed. 724 (1940). Sovereign immunity is jurisdictional in nature. Indeed, the "... terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); see also United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction").

The NFIA's waiver of sovereign immunity can be found at 42 U.S.C. § 4072, which provides, in pertinent part, as follows:

[U]pon the disallowance by the Director [of FEMA] of any ... claim, or upon the refusal of the claimant to accept the amount allowed upon any ... claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim ... and original exclusive jurisdiction is hereby conferred upon ... [the District Court] to hear such action without regard to the amount in controversy.

This court finds that this waiver is narrow and represents consent to only those actions which stem from FEMA's denial of claims. In this case, according to Plaintiff's complaint, Plaintiff's claim was denied by the WYO company—Defendant Bankers—and not FEMA or, as its agent, FIA. Therefore, Plaintiff has failed to plead that jurisdiction exists in this case by alleging a waiver of the Federal Defendants' (as agents of the federal government) sovereign immunity as to any of his claims. For this reason, the court has no jurisdiction to hear this matter as against such defendants.[4]

## B. Plaintiff's Claims Against Defendant Bankers

Defendant Bankers argues in its motion that Plaintiff's third amended complaint should be dismissed for lack of jurisdiction and for failure to state a claim upon which relief can be granted. Defendant Bankers' primary argument is that Plaintiff's state law claims are preempted under the NFIA and that, as such, the court does not have subject matter jurisdiction over such claims. Defendant Bankers also argues that, even if such claims are not barred, they are deficient as a matter of law.[5]

### 1. *History of the NFIP*

In order to adequately address Defendant Bankers' arguments, it is helpful to first examine the history of the NFIP. The NFIP was established in 1968 pursuant to the National Flood Insurance Act ("NFIA"). *See* 42 U.S.C. §§ 4001, et seq. Congress created the program to provide property owners with flood insurance which was otherwise not available from private insurers. *See* 42 U.S.C. § 4001. The NFIP is a federally-subsidized program which provides flood insurance at below actuarial rates and, as such, the

program is designed to lose money. *See Wagner v. Director, Federal Emergency Management Agency,* 847 F.2d 515, 516 (9th Cir.1988).

■ As part of the NFIA, Congress expressly stated its intent and purposes. Specifically, Congress expressly stated that its intent in enacting the NFIA was to make flood insurance available to those in need of such protection on reasonable terms and conditions. *See* 42 U.S.C. § 1004(a), (b); *see also Bolton v. Giuffrida,* 569 F.Supp. 30, 35 (N.D.Cal.1983). Congress stated that "... it is in the public interest for persons already living in flood-prone areas to have both an opportunity to purchase flood insurance and access to more adequate limits of coverage so that they will be indemnified for their losses in the event of future flood disasters." *See* 42 U.S.C. § 4002(a)(6). Congress also expressly stated that the NFIP is to be flexible so that "... flood insurance may be based on workable methods of pooling risks, minimizing costs, and distributing burdens equitably among those who will be protected by flood insurance and the general public." *See* 42 U.S.C. § 4001(d). Finally, Congress authorized the establishment of the NFIP in order to "... enable interested persons to purchase insurance against loss resulting from physical damage to or loss of real property or personal property relating thereto arising from any flood occurring in the United States." *See* 42 U.S.C. § 4011(a).

Initially, the program was administered primarily through the National Flood Insurers Association under the supervision and financial support of the Department of Housing and Urban Development ("HUD"). However, on January 1, 1978, pursuant to 42 U.S.C. § 4071, the Secre-

---

4. Given that the court finds that it does not have jurisdiction to hear this matter as against the Federal Defendants, the court does not reach their argument that Plaintiff's claims against them are barred because Plaintiff failed to submit an administrative claim pursuant to the FTCA.

5. It appears that Defendant Bankers is taking the position that Plaintiff's third amended complaint does not contain any claims sounding in contract based on denial of his NFIP claim and that, as a result, either of these two arguments should result in dismissal of the third amended complaint with respect to all claims against Defendant Bankers.

tary of HUD terminated that arrangement and assumed complete administration of the program. On April 1, 1979, pursuant to an executive order and Reorganization Plan No. 3 of 1978, FEMA was made principally responsible for the program's operation and administration.[6]

Pursuant to authority conferred in the NFIA, FEMA promulgated by regulation the SFIP and provided for marketing and claims adjustment by private insurers operating as WYO companies. *See* 44 C.F.R. § 61.13(f). WYO companies issue policies (SFIPs) in their names and such policies cannot be altered absent express authorization from FEMA. *See* 44 C.F.R. Pt. 61, App. A(1); §§ 61.5(i) and 61.13(a), (d). WYO companies collect premiums in segregated accounts from which they pay claims and make necessary refunds under the policies. *See* 44 C.F.R. § 62.23(d). Premiums collected from policy holders by WYO companies are, after deductions of fees and administrative costs, deposited in the United States treasury. The FIA, which is an arm of FEMA, maintains ultimate responsibility for the handling of all NFIP insurance policies and any claims are paid by the federal government. *See Fenton v. Federal Insurance Administrator*, 633 F.2d 1119 (5th Cir.1981).

■ Finally, it is well settled that federal common law governs the interpretation of SFIPs. *See McHugh v. United Service Automobile Association*, 164 F.3d 451, 454 (9th Cir.1999) ("The law is clear that, as contracts, SFIPs issued under the [NFIP] are governed by federal law applying standard insurance law principles."). Thus, applying general preemption principles, *McHugh* clearly found that the NFIA preempts state law with respect to contract claims.

### 2. Preemption of State Law Tort Claims Under the NFIA

Plaintiff claims that Defendant Bankers made material misrepresentations during the course of the purchase of Plaintiff's SFIP and acted in bad faith with respect to the handling of Plaintiff's NFIP claim. Defendant Bankers argues that these state law claims are barred because such claims are preempted under the NFIA. The court notes at the outset that there is a distinction between a claim of fraud or bad faith on the one hand and a claim for coverage or breach of contract on the other—the latter involves principals of contract law whereas the former sound in tort. Thus, while it is well settled in this Circuit under *McHugh, supra*, that federal law governs interpretation of the terms Plaintiff's SFIP, this rule does not necessarily mean that the NFIA preempts state law tort claims arising from either the purchase of SFIPs or the handling of claims under SFIPs.

■ In order to address Defendant Bankers' preemption argument, this court looks to the general preemption principles outlined by the Supreme Court in *English v. General Electric Company*, 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). The Supreme Court has explained that state law is preempted by federal law in three circumstances. *Id.* at 78, 110 S.Ct. 2270. First, "Congress can define explicitly the extent to which its enactments preempt state law." *Id.* (citations omitted). Second, in the absence of explicit statutory language, the Supreme Court held that:

[S]tate law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation ... so pervasive as to make rea-

---

**6.** The program is currently operated financially through the National Flood Insurance Fund established by the Director of FEMA in the Treasury of the United States. *See* 42 U.S.C. § 4017. The Director of FEMA carries out the program through the facilities of the federal government. *See* 42 U.S.C. § 4071(a).

The Director of FEMA is authorized to utilize federal employees and/or private insurance companies and other insurers, insurance agents and brokers, and insurance adjustment organizations, as fiscal agents of the Untied States. *See* 42 U.S.C. § 4071(a)(1).

sonable the inference that Congress left no room for the State to supplement it," or where an Act of Congress "touch[es] a field in which the federal system will be assumed to preclude enforcement of state laws on the same subject."

*Id.* at 79, 110 S.Ct. 2270 (citations omitted).

Finally, state law is preempted to the extent that it "... actually conflicts with federal law." *Id.* (citations omitted).

There appears to be a split of opinion within the Ninth Circuit (and, indeed, across the country) as to this question of whether state law tort claims are preempted under the NFIA. In *Van Holt v. Liberty Mutual Fire Insurance Company,* 143 F.3d 783 (3rd Cir.1998), the Third Circuit Court of Appeals, looking to the plain language of 42 U.S.C. § 4053, found that "[t]here is simply no indication that Congress intended to create jurisdiction for any claims other than coverage claims" and held that state law torts claims are preempted under the NFIA.[7] *Id.* at 788. The opinion noted that the legislative history of § 4053 specifically states that, "... even though claimants may only sue for coverage in federal court, they maintain the right to pursue other 'legal remedies in State courts.' " *Id.* (citations omitted).

Similarly, in *Stapleton v. State Farm Fire and Casualty Company,* 11 F.Supp.2d 1344 (M.D.Fla1998), a District Court in Florida determined that state law tort claims are barred under the NFIA. Citing to 42 U.S.C. § 4053, the court held that the "... language of the NFIA indicates that this Court may only review those cases that involve disputes in coverage, or breach of contract causes of action deriving from a denial of insurance claims." *Id.* at 1346. The court in *Staple-*

*ton* stated that the plain language of § 4053 "action on such claim" allows only for actions based on the SFIP (i.e., contract actions for coverage or breach of contract). As such, the court concluded that state law tort actions are preempted.

In an unpublished December 2, 1998, opinion from the Northern District of California, a District Court in this circuit also found that state law tort claims are preempted. *See Bianchi v. State Farm Fire and Casualty Company,* Northern District of California Case No. C–98–70277–JW.[8] As in *Stapleton,* the court in *Bianchi* (which cited *Stapleton* ) looked to § 4053. The court in *Bianchi* went on to note that "... the language [of § 4053] makes no mention of other causes of action that may be brought as a result of the insurer's failure to pay a claim." The court cited *Van Holt, supra,* to conclude that, since Congress could have used broader language, such as "relating to the insurance policy" or "relating to the claim's investigation or adjustment," but chose not to do so, such non-contract claims are preempted and, thus, not cognizable under the NFIA.

However, in *Zumbrun v. United Services Automobile Association,* 719 F.Supp. 890 (N.D.Cal.1989), another District Court in this circuit held in a published opinion that "... no federal purpose would be defeated by the adoption of state law as the rule of decision in cases involving the handling of claims." *Id.* at 894. The court noted that "... there is no apparent reason that the rules regulating the procedural aspects of the relationship between a participating private insurer and its insured require ... a uniform national rule." *Id.* The court continued by stating that,

---

**7.** Section 4053 provides, in pertinent part, as follows:

The insurance companies and other insurers which form, associate, or otherwise join together in the pool under this part may adjust and pay all claims for proved and approved losses covered by flood insurance in accordance with the provisions of this chapter and, upon the disallowance ...

of any such claim ... the claimant ... may institute an action on such claim against such company or other insurer ...

**8.** The court refers to this unpublished opinion solely for the purpose of providing a complete survey and analysis of this issue and not for the purpose of citing the case for precedent value.

"... where, as in California, state law has evolved rigorous and well-defined standards of conduct regulating insurers operating within their borders, one federal goal, the achieving of an efficient national flood insurance program would appear well-served by adherence to those standards." *Id.* at 894–895. Finally, the court noted:

> [T]he regulations governing WYOs may be read as suggesting that conventional, i.e., state standards, apply. For example, although the regulations note that claims adjustment practices are to be "guided by NFIP Claims manuals," they also provide that "WYO companies will adjust claims in accordance with general Company standards," and that "the responsibility of defending claims will be upon the Write–Your–Own Company." Clearly, both the companies' adjustment standards and their methods for defense of litigation have evolved in response to state law.

*Id.* at 895 (citations omitted).

Thus, this case appears to stand for the proposition that state law tort claims (at least claims for bad faith) are not preempted under the NFIA.

The Fifth Circuit Court of Appeals in *Spence v. Omaha Indemnity Insurance Company*, 996 F.2d 793 (5th Cir.1993), squarely held that state law tort claims based on misrepresentation are not preempted. The court held that "[w]hile national policies underlying the NFIP and extensive federal role therein impel our conclusion that federal common law governs claims under flood insurance policies, the same does not apply in actions for tortious misrepresentation against WYO insurers." *Id.* at 796. First, the court in *Spence* noted that applicable regulations "... accord substantial autonomy to WYO companies in SFIP marketing and claims adjustment, and expressly provide that 'WYO Companies shall not be agents of the Federal Government.'" *Id.* (citing at

fn. 15 to 44 C.F.R. § 62.23(e) and 44 C.F.R. Pt. 62, App. A, Art. II, sec. G). Next, the court also noted 42 U.S.C. § 4081(c), which provides that FEMA may not indemnify or hold harmless a WYO for its error or omission. *Id.* at fn. 17. Finally, the court noted that the NFIA contains no express preemption provision. Based on these observations, the court in *Spence* concluded that state law tort claims for fraud were not preempted under the NFIA.

In addition, this court notes that, while the bulk of the District Court's opinion in *Stevens v. Bankers Insurance Company*, 970 F.Supp. 769 (N.D.Cal.1997), dealt with breach of SFIP contract claims, the court in that case determined that it could not grant summary judgment on the bad faith claim due to insufficient evidence. Thus, in even considering the sufficiency of the evidence on the state law tort claim of bad faith, the court implied that such a claim is cognizable under the NFIA.

Finally, in *Cohen v. State Farm Fire and Casualty*, 68 F.Supp.2d 1151 (C.D.Cal. 1999), the District Court, in a detailed field preemption analysis agreeing with *Zumbrun* and *Spence, supra,* and distinguishing *Bianchi, supra,* concluded that the NFIA does not preempt state law tort claims.[9]

■ Applying the general preemption principles outlined in *English, supra,* this court begins, as did the courts in *Van Holt, Stapleton* and *Bianchi, supra,* by looking to the plain language of 42 U.S.C. § 4053 to determine whether Congress clearly manifested an intent to preempt state law tort claims under the NFIA. The key language of the statutes provides: "[U]pon the disallowance ... of [a] claim ... the claimant ... may institute an action on such claim ..." Focusing further on the phrase "action on such claim," this court finds that this language clearly refers to previous language in the statute

---

**9.** The court in *Cohen* noted that the Fifth Circuit's opinion in *Spence* is the only circuit court case on point. Thus, it appears that the

*Cohen* court did not consider the Third Circuit's earlier opinion in *Van Holt, supra.*

which provides that insurance companies which pool together under to write SFIPs may "... adjust and pay all claims *for proved and approved losses covered by flood insurance* ..." *See* 42 U.S.C. § 4053 (emphasis added). Thus, by the plain language of the statute, "such claim" refers to claims for proved and approved losses covered by flood insurance. Based on the plain language of § 4053, this court finds that Congress clearly manifested an intent to allow only for claims on the contract. In making this finding, this court notes that the courts in *Spence, Zumbrun, Stevens,* and *Cohen, supra,* all based their analyses on the field preemption test articulated in *English, supra,* and not on the plain language of § 4053. For this reason, this court is not persuaded by the analyses contained in those opinions and holds that state law tort claims are preempted by the NFIA.[10]

### 3. *Plaintiff's Contract Claims*

Based on the foregoing, the only claims remaining are Plaintiff's contract claims against Defendant Bankers. However, upon review of the third amended complaint, the court finds that Plaintiff's contract claims are not clearly articulated and, as such, do not state a claim upon which relief can be granted. It appears that Plaintiff may be able to state such a claim. Therefore, Plaintiff will be granted leave to amend.

▬▬ With respect to recoverable damages, the court notes that Plaintiff's third amended complaint seeks recovery of punitive damages (Ninth Claim for Relief), emotional distress damages (Tenth Claim for Relief), and attorney's fees (Twelfth Claim for Relief). Plaintiff is advised that such damages are not recoverable under the NFIA. *See Eddins v. Omega Insurance Company,* 825 F.Supp. 752 (N.D.Miss.1993) (punitive damages not recoverable under the NFIA); *Friedman v. South Carolina Insurance Company,* 855 F.Supp. 348 (M.D.Fla.1994) (emotional dis-

tress damages not recoverable under the NFIA); and *West v. Harris,* 573 F.2d 873 (5th Cir.1978) (attorney's fees not recoverable under the NFIA). Therefore, any amended complaint filed consistent with this memorandum opinion and order should not seek such relief.

Plaintiff is further advised that failure to file an amended complaint consistent with this memorandum opinion and order within the time provided for below will result in dismissal of the entire action. The parties are advised that, upon the filing of an amended complaint consistent with the foregoing, the court shall re-set the mandatory scheduling conference in this matter.

Finally, Plaintiff is informed that the court cannot refer to a prior pleading in order to make Plaintiff's amended complaint complete. Local Rule 15–220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay,* 375 F.2d 55, 57 (9th Cir.1967). Once an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Accordingly, the court HEREBY ORDERS as follows:

1. The Federal Defendants' motion to dismiss is GRANTED and this action is DISMISSED, *as to such defendants only,* with prejudice;

2. Defendant Bankers' motion to dismiss is GRANTED and the third amended complaint is DISMISSED, *as to Plaintiff's state law claims,* with prejudice;

3. Defendant Bankers' motion to dismiss is GRANTED and the third amended complaint is DISMISSED, *as to Plaintiff's contract claims,* with leave to amend;

---

**10.** Given this holding, the court does not reach Defendant Bankers' argument that

Plaintiff's state law claims are deficient as a matter of law.

4. Plaintiff shall file a fourth amended complaint consistent with the foregoing within twenty days of the date of service of this memorandum opinion and order.