Kenneth DAVIS and Barbara Davis, Plaintiffs,

v.

TRAVELERS PROPERTY AND CASU-ALTY CO., Travelers Group, Travelers Flood Insurance Program, Aetna, and Does 1–75, Inclusive, Defendants.

No. C 99–02025 WHA.

United States District Court, N.D. California.

April 19, 2000.

Thomas E. Niederreuther, Law Offices of Thomas E. Niederreuther, Corte Madera, CA, for plaintiffs.

Michael A. Farbstein, Gary Gleason, Farbstein and Blackman, San Mateo, CA, Gerald J. Neilsen, Neilsen Law Firm, Metairie, LA, for defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS (EXCEPT IN LIMITED PART)

ALSUP, District Judge.

### INTRODUCTION

The issue on defendants' motions is whether the National Flood Insurance Program immunizes a "write-your-own" carrier from any and all state-law liability (apart from flood insurance payments) for wrongful acts in processing NFIP claims. This order holds that there is no such blanket immunity.

### STATEMENT

Plaintiffs, Kenneth and Barbara Davis of Corte Madera, argue that Travelers misled them to their detriment in advising them how to process their flood insurance claims. Plaintiffs' home was flooded on February 28, 1998. Covered by the National Flood Insurance Program (NFIP), they advised Travelers Property & Casualty Co., the underwriter of their standard NFIP policy, of their losses. Under the NFIP, private insurers write standard flood insurance policies (SFIPs) under their own names. See 44 C.F.R. 62.23. The SFIPs issued by the private insurers are identical to those issued directly by the Federal Emergency Management Agency (FEMA), and is published in the Code of Federal Regulations. See 44 C.F.R. Pt. 61, App. A(1). Private insurers, like Travelers, that issue SFIPs are sometimes referred to as "write-your-own" insurers or "WYO" insurers. Under the NFIP regulations, WYO insurers pay claims out of the National Flood Insurance Fund. The federal government assumes full liability for SFIPs issued by WYO insurers. See 44 C.F.R. 62.23(f).

By form letter dated March 31, 1998, Travelers acknowledged receipt of plaintiffs' notice of loss and stated that the claim had been assigned to De Cesare Insurance Adjusters in Fresno for investigation. Travelers stated: "Your cooperation and assistance in working with the adjusters is appreciated." The letter asked the insureds to complete and to date a claims questionnaire and return it within three days of receipt "to insure prompt processing of your claim." The enclosed form stated that it "must be completed and returned with 72 hours of receipt." The letter sated: "Additionally, we do require evidence of repair of prior flood damage, if applicable." The insureds were instructed to "have your receipts and invoices ready to give to the adjuster in the event there was prior flood damage to your building. . . ." *No mention was made of any*

*requirement to submit a sworn proof of loss.*

The insureds filled in the form and returned it within the 72–hour period specified. This form, however, required neither a signature under penalty of perjury nor a statement of a dollar amount. Again, Travelers' letter made no mention whatsoever of proof of loss, much less a sworn proof of loss, even less of a requirement to file a sworn proof of loss within sixty days of the occurrence.

Various inspections by the adjusters then ensued. In late April, meanwhile, the sixty-day period for submitting a sworn proof of loss ran. No sworn proof of loss was ever submitted. Although the policy in their possession stated that a sworn proof of loss within sixty days was a requirement, plaintiffs allege that they were unaware of the requirement.

On May 14, 1998—after the sixty days ran—Travelers sent a form letter to "Dear Insured" stating that "Our records show a pending flood claim" and for the first time advising that plaintiffs needed to file a proof of loss within sixty days of their loss:

> "Policy provisions state that you must file a formal proof of loss (which is your statement to us listing the dollar amount of your claim) within 60 days from the date of loss. If this provision is not complied with, your claim may be denied. It is your responsibility to complete this form; however, the adjusters may assist you. An immediate written explanation must be sent to us if there is a valid reason why you cannot comply with this policy provision. Once your request is received, we will consider an extension.
>
> \* \* \* \* \* \*
>
> By this letter we do not intend to waive or relinquish any of our rights or defenses . . . ."

Even this letter did not actually say that any proof of loss had to be sworn; nor did it identify any policy provisions. In these circumstances, an insured might reasonably have thought that the claims questionnaire previously requested by Travelers on 72–hours notice (and submitted within the sixty days) would have constituted the "formal proof of loss." The letter did not say to the contrary. No proof-of-loss form was enclosed in the letter or in any other Travelers letter.

After receiving the May 14 letter, Mr. Davis telephoned the adjuster. The adjuster stated that he already had all the paperwork needed and that there was no need for plaintiffs to prepare another form. Thereafter, Travelers provided a form to the insureds entitled "National Flood Insurance Program Final Report." The form did not call itself a proof of loss. The form was evidently filled out by the adjuster and would have allowed $5,459.08 in payment. There were blanks for the signatures of the insureds, above which was printed "The above statements are true and correct to the best of my knowledge. I understand that any false statements may be punished by fine or imprisonment under 18 U.S.C. Sec. 1001." Plaintiffs declined to sign because they thought they should receive substantially more. Travelers states that even this report would not have been a sworn proof of loss.

The SFIP provides that the adjuster has no duty to furnish a proof-of-loss form or assist the insured in filling one out:

> The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you to complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

(SFIP; 44 C.F.R. pt. 61, app. A(1), art. 9, § J(6)).

On August 18, 1998, Travelers sent another form letter to "Dear Insured," stating in part:

> We have reviewed the supplemental request for the referenced date of loss and find that we are unable to extend any

further payment for your flood related damages.

Given that Travelers had never made any payment at all, this sentence was hard to understand. The letter went on to deny coverage on the ground that the flood water did not cause the damage. No mention was made of a sworn proof-of-loss requirement.

Plaintiffs then filed this lawsuit in state court and defendants removed it to this court. Plaintiffs sued on the policy and on state-law claims. Only then did Travelers seek to deny coverage on the ground that plaintiffs had not submitted a sworn and timely proof of loss as required by SFIP. Section J(3) of Article 9 of the SFIP provides as follows:

Should a flood loss occur to your insured property, you must:

\* \* \* \* \* \*

3. Within 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy signed and sworn to by you and furnishing us with the following information:

a. The date and time of the loss,

b. A brief explanation of how the loss happened,

c. Your interest in the property damaged (for example, "owner") and the interests, if any, of others in the damaged property,

d. The actual cash value or replacement cost, whichever is appropriate, of each damaged item of insured property and the amount of damages sustained,

e. Names of mortgagees or anyone else having a lien, charge or claim against the insured property,

f. Details as to any other contracts of insurance covering the property whether valid or not,

g. Details of any changes in ownership, use, occupancy, location or possession of the insured property since the policy was issued,

h. Details as to who occupied any insured building at the time of loss and for what purpose, and

i. The amount you claim is due under this policy to cover the loss, including statements concerning:

(i) The limits of coverage stated in the policy,

(ii) The cost to repair or replace the damaged property (whatever costs less).

As noted, plaintiffs had a copy of this policy in their personal files with the foregoing language.[1]

■ Travelers moved both to dismiss the complaint and for summary judgment on the ground that no sworn proof of loss was filed within the sixty-day period. A hearing was held on these motions on February 24, 2000. The Court dismissed plaintiffs' claim directly under the policy pursuant to *Flick v. Liberty Mutual Fire Insurance Company*, 205 F.3d 386 (9th Cir.2000), but did not rule on plaintiffs' state-law claims. Instead, the Court asked the government for its views on whether the National Flood Insurance Program immunizes WYO insurers like Travelers from liability for misleading conduct in the processing of a SFIP claim. The government responded with a brief supporting Travelers' position that such extra-policy state-law claims are preempted and are barred by the Appropriations Clause. The Court appreciates the courtesy of the government in responding. A further hearing was held on the state-law claims during the pretrial conference on April 10, 2000.

## ANALYSIS

The Court has subject-matter jurisdiction over plaintiffs' state-law claims. *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163

---

1. This potentially troubling fact was not in the summary judgment record. Rather, defendants' counsel brought a copy to the hearing and represented that it had been produced from plaintiffs' files. Plaintiffs' counsel then agreed that the policy had been produced to defendants.

F.3d 161, 167 (3rd Cir.1998). The record in this case might support plaintiffs' state-law claims. For example, Travelers chose to guide the insureds in how to file a claim by the March 31 correspondence, going so far as to enclose a form of questions and to require its submission within 72 hours, all "to ensure prompt processing of your claim." Having affirmatively undertaken to tell the insured how to proceed in the March 31 letter, Travelers was arguably under a duty not to mislead the insured to their prejudice. *Cf. FNS Mortgage Serv. Corp. v. Pacific Gen. Group, Inc.*, 24 Cal. App.4th 1564, 1572, 29 Cal.Rptr.2d 916 (1994) (listing elements of breach of special duty as follows: (1) defendant undertook to act for benefit or protection of plaintiff; (2) defendant failed to do so; and (3) defendant's breach of the assumed duty either increased the risk of harm to plaintiff or plaintiff suffered harm in reliance on defendant's undertaking).

The immediate issue presented, however, is not whether plaintiffs can ultimately make out a state-law claim, but is whether federal law eclipses any such claim at the threshold. Defendants and FEMA raise two potential bars to plaintiffs' state-law claims. First, defendants and FEMA contend that the NFIP preempts plaintiffs' state-law claims. Second, defendants and FEMA contend that payment on plaintiffs' state law claims would run afoul of the Appropriations Clause of the United States Constitution. The Court rejects both of these contentions as discussed below.

### 1. Preemption

#### a. General Principles of Preemption

The Supreme Court has explained that there are three ways in which federal law may preempt state law under the Supremacy Clause of the United States Constitution:

First, Congress can define explicitly the extent to which its enactments pre-empt state law....

Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Although this Court has not hesitated to draw an inference of field pre-emption where it is supported by the federal statutory and regulatory schemes, it has emphasized: "Where ... the field which Congress is said to have pre-empted" includes areas that have "been traditionally occupied by the States," congressional intent to supersede state laws must be "clear and manifest."

Finally, state law is pre-empted to the extent that it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*English v. General Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Defendants argue that the doctrines of express preemption, field preemption and conflict preemption each apply to bar plaintiffs' state-law claims.

#### b. Deference to Agency Position on Preemption

█ FEMA joins defendants in arguing that field preemption and conflict preemption bar plaintiffs' state-law claims. Defendants argue that the Court must defer to FEMA's views on these issues because FEMA is the agency that administers the NFIA. Defendants cite the line of cases starting with *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694

(1984), for the proposition that when Congress has not specifically addressed a question, a reviewing court must respect the agency's construction of the statute so long as it is permissible. There is no doubt that defendants have correctly stated a valid principle of statutory construction. Its application to the case at hand, however, is questionable.

First, defendants have not pointed to any controlling authority that directs the Court to defer to an agency's view that the statute it administers implicitly preempts state law. Second, the Supreme Court has assumed, without deciding, that the question of whether a statute is preemptive "must always be decided *de novo* by the courts." *Smiley v. Citibank,* 517 U.S. 735, 744, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996). The Court follows that suggestion here and reviews the preemption issue *de novo.*

### c. The Preemptive Effect of the NFIP

### (i) Express Preemption

■ Defendants argue that the plain language of the National Flood Insurance Act (NFIA) preempts state-law claims. Section 4072—the codified section of the Act that addresses adjustment and payment of claims, judicial review, limitations and jurisdiction—provides as follows:

> In the event the program is carried out as provided in section 4071 of this title, the Director shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdic-

tion is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy. 42 U.S.C. 4072. Defendants argue that "claim" refers to proved-loss claims, not other types of claims. Therefore, defendants reason, the plain language indicates that Congress intended to preempt state-law claims. Contrary to defendants' position, however, the language of Section 4072 does not plainly preempt state-law claims. As noted in *Cohen v. State Farm Fire and Casualty,* 68 F.Supp.2d 1151, 1160 (C.D.Cal.1999), "Section 4072 merely confers jurisdiction to entertain a failure to pay a claim; it does not preclude other claims from being considered under principles of supplemental jurisdiction."

Defendants briefs argued that the Court should follow *Bianchi v. State Farm Fire and Casualty Company, et al.,* No. C–98–20722–JW (N.D.Cal. Dec. 2, 1998), and *Mason v. Witt, et al.,* 74 F.Supp.2d 955 (E.D.Cal.1999), both of which held that language similar to that in Section 4072 expressed the intent of Congress to preempt state-law claims under the theory advanced by defendants.[2] Both *Bianchi* and *Mason,* however, relied on *Van Holt v. Liberty Mutual Fire Insurance Company,* 143 F.3d 783, 787 (3d Cir.1998) (*Van Holt I*), which the Third Circuit vacated on rehearing. *See Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161 (3d Cir.1998) (*Van Holt II*). Defendants did not mention in their briefs or at the hearings that *Bianchi* and *Mason* relied on the vacated *Van Holt I.* Indeed, at the pretrial conference, counsel for defendants represented that *Cohen v. State Farm Fire and Casualty,* a case favoring plaintiffs, relied on *Van Holt I,* the vacated decision (Tr. 26:21 – 27:3). According to counsel, *Cohen* was part of a "mess" started by the vacated decision (*ibid.*). In fact, *Cohen* did not rely on *Van Holt I. Cohen* discussed the Third Circuit's revision of its earlier opinion and correctly cited and relied on *Van*

---

**2.** *Bianchi* and *Mason* inadvertently addressed similar language in Section 4053. The differ-

ences between the two sections are not relevant to this analysis.

*Holt II. See Cohen,* 68 F.Supp.2d at 1159. What is more, *Mason* and *Bianchi,* defendants' authorities, as stated, did rely on the vacated *Van Holt I.*

In the *Van Holt* cases, an insured brought only state-law claims under an SPIF issued under the NFIP, claiming federal-question jurisdiction under Section 4053. In its first opinion, the court concluded that Section 4053 provided subject-matter jurisdiction only for loss claims "and not for state-law torts which arise out of the claims investigation and adjustment procedure executed by the insurance company." 143 F.3d at 787. The court ordered the case dismissed for lack of subject-matter jurisdiction without discussing whether the NFIA preempted the state-law claims. *Id.* at 787–89. Shortly after its first opinion issued, the court agreed to rehear the case. In *Van Holt II,* the court vacated its earlier decision and held that there was federal jurisdiction over the insured's state-law claims:

> We now determine that Congress, had it considered the specific question, would have intended to confer original jurisdiction on the district court over claims sounding in tort arising out of the investigation or adjustment or insurance policies arising out of the administration and sale of insurance under the NFIA.

163 F.3d at 167. After finding federal question jurisdiction, the *Van Holt II* court affirmed the district court's grant of summary judgment based on the insured's failure to produce sufficient evidence. Like *Van Holt I, Van Holt II* did not reach whether the NFIA preempted the insured's state-law claims.

Unaware of the Third Circuit's revised opinion, the *Bianchi* and *Mason* courts relied on the analysis in *Van Holt I.* The *Mason* court went so far as to rely on *Van Holt I* for the proposition that the NFIA preempts state-law claims, although *Van Holt I* had not actually reached the preemption issue:

> In *Van Holt v. Liberty Mutual Fire Insurance Company,* 143 F.3d 783 (3d Cir.1998), the Third Circuit Court of Ap-

peals, looking to the plain language of 42 U.S.C. § 4053, found that "[t]here is simply no indication that Congress intended to create jurisdiction for any claims other than coverage claims" and held that state law torts claims are preempted under the NFIA. *Id.* at 788.

*Mason,* 74 F.Supp.2d at 961. *Bianchi,* citing *Van Holt I,* concluded that Congress must have intended to restrict federal jurisdiction to suits seeking to recover on policy claims to the exclusion of state-law claims sounding in tort. *Bianchi* Order at 5.

The plain language of Section 4072 does not expressly reflect the intent of Congress to preempt extra-contractual state-law claims arising from the handling of SFIP claims. The *Bianchi* and *Mason* decisions do not persuade the Court otherwise. This Court therefore holds that the plain language of Section 4072 does not bar plaintiffs' state-law claims.

### (ii) Field Preemption

■ Defendants and FEMA both contend that field preemption, as described by the Supreme Court in *English,* bars plaintiffs' state-law claims. As recited above, "[w]here ... the field which Congress is said to have pre-empted" includes areas that have "been traditionally occupied by the States," congressional intent to supersede state laws must be "clear and manifest." Defendants and FEMA argue that *flood insurance* has not traditionally been occupied by state law, while plaintiffs argue that the area of *insurance* has been traditionally occupied by state law. The Court is inclined to agree with plaintiffs and lump flood insurance with insurance generally. As a subcategory of insurance, flood insurance, to the extent it existed, was part of a field traditionally occupied by the States. But even under a lesser standard than "clear and manifest," defendants have not carried their burden to establish field preemption.

It is true that Congress gave FEMA broad authority to regulate claims under

the NFIP. To effectuate the goals of the NFIP, Congress authorized FEMA to promulgate regulations "for general terms and conditions of insurability" and to implement regulations limiting the amount of flood insurance coverage. 42 U.S.C. 4013. Congress also authorized FEMA to "prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid for any damage or loss of property which is covered by flood insurance." 42 U.S.C. 4019. Pursuant to this authorization, FEMA promulgated regulations governing the NFIP in Parts 59–77 of Title 44 of the Code of Federal Regulations. FEMA argues that these regulations constitute a pervasive and comprehensive scheme of federal regulation setting forth the rights and responsibilities of insureds and insurers under the NFIP. According to FEMA, this comprehensive regulatory scheme preempts any state law claim arising in connection with an SFIP.

■ The NFIA itself, however, suggests that Congress did not intend to preempt extra-contractual state-law claims. Congress acknowledged state-law claims when it enacted 42 U.S.C. 4081(c), which provides that FEMA "may not hold harmless or indemnify an agent or broker for his or her error or omission." See Public Law 97–35 (Aug. 13, 1981), 95 Stat. 357 (codified at 42 U.S.C. § 4081(c)). Given that the NFIA has no provision for holding insurers liable for error or omissions, a logical conclusion to be drawn from this provision is that Congress contemplated that state tort law could apply to the conduct of WYO insurers. *Cohen*, 68 F.Supp.2d at 1157. In addition, FEMA's own regulations address state-law tort claims against WYO insurers. Appendix A to 44 C.F.R. 62 provides that FEMA can refuse to reimburse a WYO insurer if a claim is based on actions by the insurer outside the scope of the NFIP:

> Limitation on Litigation Costs. Following receipt of notice of such claim, the Office of General Counsel (OGC), FEMA, shall review the information

submitted. If it is determined that the claim is grounded in actions by the Company that are outside the scope of this Arrangement, the National Flood Insurance Act, and 44 C.F.R. chapter 1, subchapter B, and/or involve issues of insurer/agent negligence as discussed in Article IX of this Arrangement, the OGC shall make a recommendation to the Administrator as to whether the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement. In the event the Administrator determines that the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement, the Company will be notified, in writing, within thirty (30) days of the Administrator's decision if the decision is that any award or judgment for damages arising out of such actions will not be recognized under Article III of this Arrangement as a reimbursable loss cost, expense or expense reimbursement.

Based on these provisions, the Court agrees with *Cohen* that FEMA's regulatory scheme does not occupy the flood-insurance field to the exclusion of state law as to claims concerning improper handling. *See Cohen*, 68 F.Supp.2d at 1160.

Defendants and FEMA argue that flood insurance is a field in which the federal interest is so dominant that the federal system should be assumed to preclude enforcement of state laws on the same subject. *See English*, 496 U.S. at 79, 110 S.Ct. 2270. There is no doubt that the NFIP involves strong federal interests. As FEMA points out, making flood insurance available, even at below actuarial rates, spreads the risk of massive-disaster related expenses. In the absence of privately-procured insurance, the Federal Treasury historically bore the risk of these disasters alone. But the record does not show that Congress thought it necessary to preempt extra-contractual claims in order to protect its interests. Nor does the record show that preemption of state-law,

extra-contractual claims would further the federal interests in providing flood insurance. In *Spence v. Omaha Indemnity Insurance Co.*, 996 F.2d 793 (5th Cir.1993), the Fifth Circuit held that the NFIA did not preempt the state's statute of limitations. In reaching its conclusion, the court discussed the federal interest in flood insurance:

> While the national policies underlying the NFIP and extensive federal role therein impel our conclusion that federal common law governs claims under flood insurance policies, the same does not apply in actions for tortious misrepresentation against WYO insurers. FEMA regulations accord substantial autonomy to WYO companies in SFIP marketing and claims adjustment, and expressly provide that "WYO Companies shall not be agents of the Federal Government." Further, while WYO insurers may draw on FEMA letters of credit to pay SFIP claims, the WYO–FEMA agreement does not permit such draws to cover a WYO company's liability for fraud. The more attenuated federal interests in such claims lead to our conclusion that the limitations period governing them derives from state rather than federal law. Article VIII(Q) of the SFIP concerns only suits "to recover money under this policy." Likewise, § 42 U.S.C. 4072 addresses itself solely to actions arising from partial or complete disallowance of flood insurance policy claims. Neither provision sets a limitations period governing tort actions based on misrepresentations concerning the SFIP, as opposed to contract claims under the SFIP itself. Absent express preemption of state law fraud actions against WYO insurers or conflict with any federal provision, we conclude that the Spences timely filed their action for misrepresentation under the four-year Texas limitations period.

*Id.* at 796.

Defendants also argue that the application of the different laws of fifty different states would create radically different results in different cases within the context of a national program. Chaos is unlikely. Nationwide insurers are already subject to fifty separate regimes. Defendants represented at the hearings on these motions that the NFIP works incredibly well and results in very few law suits of this nature. It is hard to believe that the NFIP will be compromised merely if states subject WYO carriers to their normal rules that apply to the same carriers in non-NFIP contexts, all the more so since FEMA's own regulations contemplate that such suits will occur from time to time.

Defendants and FEMA also urge the Court that WYO insurers should not be treated differently from FEMA. FEMA cannot be sued for extra-contractual damages when it acts as the insurer because Congress has not waived sovereign immunity for such claims. But defendants and FEMA cite no authority for the proposition that WYO insurers should be given the benefit of sovereign immunity.

Given the lack of express preemption, and the indication in the statute that Congress did not intend to preempt extra-contractual state-law claims, the Court follows the analyses of *Spence* and *Cohen* and concludes that field preemption does not apply to bar plaintiffs' state-law claims.

### (iii) Conflict Preemption

■ As stated above, conflict preemption applies where a private actor cannot comply with both state and federal law *or* the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. General Elec. Co.*, 496 U.S. at 78–79, 110 S.Ct. 2270. Defendants argue that both versions of conflict preemption apply. FEMA joins defendants in arguing that state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

■ The Court does not agree with defendants that WYO insurers cannot comply with both federal law and the state-law theory that plaintiffs have pleaded—name-

ly that once Travelers undertook to guide plaintiffs through the claims process, Travelers could not mislead plaintiffs by omitting a crucial step. No federal law required that Travelers guide insureds through the claims process, and no federal law required that Travelers omit from its guidance the sworn proof of loss requirement. Travelers could have complied with state and federal law with no conflict.

Defendants and FEMA contend that even if there was no explicit conflict, state-law claims like the one at issue present an obstacle to the goals of the NFIP. They point out that Congress provided for suit on the SFIP only after disallowance of a claim pursuant to Section 4072. The NFIA does not provide for any other express remedies. Defendants and FEMA contend that state-law claims interfere with the statutory scheme and frustrate the intent of Congress, while depleting federal funds in a manner not contemplated by Congress. As shown, state-law claims like the ones at issue will not frustrate the goals of Congress. The argument that state-law claims will deplete federal funds is not persuasive for the reasons discussed below in the Appropriations Clause analysis.

**2. Appropriations Clause**

 The Appropriations Clause of the United States Constitution provides: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. Art. I, § 9, Cl. 7. This clause prohibits the judiciary from granting any money claim against the federal government unauthorized by statute. *Office of Personnel Management v. Richmond*, 496 U.S. 414, 424, 434, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). Defendants and FEMA argue that the Appropriations Clause bars payment on extra-contractual suits against WYO insurers because such payments would come ultimately from the Treasury and Congress has not authorized such payment.

The Court does not agree. First, a judgment for plaintiffs on the state-law claims would not be against FEMA, but rather against Travelers. Neither the NFIA nor FEMA's regulations mandate that FEMA reimburse WYO insurers for payments on extra-contractual claims. Indeed, FEMA regulations suggest that the Agency has no obligation to reimburse WYO insurers for such claims. As noted above, Appendix A to 44 C.F.R. 62 provides that FEMA can refuse to reimburse a WYO insurer if a claim is based on actions by the insurer outside the scope of the NFIP:

> Limitation on Litigation Costs. Following receipt of notice of such claim, the Office of General Counsel (OGC), FEMA, shall review the information submitted. If it is determined that the claim is grounded in actions by the Company that are outside the scope of this Arrangement, the National Flood Insurance Act, and 44 C.F.R. chapter 1, subchapter B, and/or involve issues of insurer/agent negligence as discussed in Article IX of this Arrangement, the OGC shall make a recommendation to the Administrator as to whether the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement. In the event the Administrator determines that the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement, the Company will be notified, in writing, within thirty (30) days of the Administrator's decision if the decision is that any award or judgment for damages arising out of such actions will not be recognized under Article III of this Arrangement as a reimbursable loss cost, expense or expense reimbursement.

44 C.F.R. Pt. 62, App. A. Thus, if FEMA deems misleading, extra-contractual actions to be outside of its agreement with the WYO insurer, then FEMA may choose not to reimburse the WYO insurer for its litigation costs. In addition, Article IX protects FEMA from liability for the negligence of a WYO insurer:

The parties shall not be liable to each other for damages caused by inadvertent delay, error, or omission made in connection with any transaction under this Arrangement. In the event of such actions, the responsible party must attempt to rectify that error as soon as possible after discovery of the error and act to mitigate any cost incurred due to that error. In the event that steps are not taken to rectify the situation and such action leads to claims against the company, the NFIP, or other related entities, the responsible party shall bear all liability attached to that delay, error or omission to the extent permissible by law.

44 C.F.R. Pt. 62, App. A, Art. IX. Under these regulations, FEMA, hence the Treasury, need not reimburse the WYO insurer for damages caused by the insurer's inadvertent delay, error, or omission. Under these regulations, a judgment against the WYO insurer is not the equivalent of a judgment against FEMA.

Second, although it is not completely clear that Congress has authorized FEMA to reimburse WYO insurers for payments on extra-contractual claims, if it has done so (as FEMA and defendants argue) then Congress itself, not the courts, will have thrown open the door to the Treasury. As FEMA points out, Congress made the National Flood Insurance Fund available "for all purposes incident" to administration of the program under Part B of the Act, including:

(1) cost incurred in the adjustment and payment of any claims for losses, and (2) payment of applicable operating costs set forth in the schedules prescribed under section 4018 of this title, for so long as the program is so carried out....

42 U.S.C. 4017(d). FEMA negotiates payable fee schedules for operating costs with "insurance companies ... on other than a risk-sharing basis." Id. at 4018(a). "Operating costs" include, without limitation, the following:

(A) expense reimbursements covering the direct, actual and necessary expenses incurred in connection with selling and servicing flood insurance coverage;

(B) reasonable compensation payable for selling and servicing flood insurance coverage, or commissions or service fees paid to producers;

(C) loss adjustment expenses; and

(D) other direct, actual, and necessary expenses which the Director finds are incurred in connection with selling or servicing flood insurance coverage; and

(2) the term "operating allowances" shall (without limiting such term) include amounts for profit and contingencies which the Director finds reasonable and necessary to carry out the purposes of this chapter.

42 U.S.C. 4018. Under this section, the Director may reimburse WYO insurers for "direct, actual, and necessary expense[s] which the Director finds are incurred in connection with selling or servicing flood insurance coverage" and for "contingencies which the Director finds reasonable and necessary to carry out the purposes of this chapter." Arguably Congress has authorized FEMA to reimburse WYO insurers for litigation costs associated with the types of claims at issue here if the Director, in his or her discretion, finds that such reimbursement is appropriate for the program. FEMA represented at the hearing that it intended to reimburse Travelers for any liability herein. If so, it will be Congress and/or FEMA that will shift the loss from Travelers to the Treasury, not the Court.

Defendants' and FEMA's reliance on the recent Ninth Circuit decision *Flick v. Liberty Mutual Fire Insurance Company,* 205 F.3d 386 (2000), is unavailing. There, the plaintiff sought damages resulting from Liberty Mutual's denial of a SFIP claim underwritten by Liberty Mutual. The district court granted summary judgment in favor of Liberty Mutual on the

**1006**

basis that the plaintiff had failed to comply strictly with the policy's sixty-day sworn proof-of-loss requirement. The Ninth Circuit affirmed, concluding that the strict compliance rule was applicable to policies written by private insurance companies under the NFIP, because those insurers drew funds· from the Treasury to pay flood-loss claims. The Ninth Circuit reasoned that "[b]ecause flood losses, whether insured by FEMA or by a participating WYO insurer, are paid out of the National Flood Insurance Fund, a claimant under a standard flood insurance policy must comply strictly with the terms and conditions that Congress has established for payment."

The present case is distinguishable from *Flick* because it does not involve payment on a claim. As the Ninth Circuit noted, payments on SFIP claims come out of the Treasury. Here, on the other hand, the Court has dismissed plaintiffs' claim for payment on their policy; what remains is plaintiffs' suit for damages resulting from Travelers' alleged misrepresentation. Any judgment will be against Travelers (not FEMA) and it will be up to FEMA and/or Congress to decide whether to pay the recovery from the fund.

## CONCLUSION

Plaintiffs' claim directly on the policy is barred by their failure to submit a sworn proof of loss within sixty days. Whether plaintiffs can make out a state-law claim against Travelers for the way in which it handled the claim remains yet to be seen. Plaintiffs will be allowed to try. Neither federal preemption nor the Appropriations Clause bars the effort.

Defendants' motion to dismiss is otherwise DENIED as to plaintiffs' state-law claims. Defendants' motion for summary

---

judgment is DENIED as to plaintiffs' state-law claims.[3]

**IT IS SO ORDERED.**

---

3. In addition to their preemption and Appropriations Clause arguments, defendants argue that plaintiffs claims would have been excluded under the SFIP because their property was

subject to continual subsidence. Defendants' argument involves issues of fact that the Court may not resolve on summary judgment.